## 46211. LEACH v. THE STATE.

(376 SE2d 667)

Bell, Justice.

The appellant, Ray Victor Leach, was convicted of the murder of Vickie Stegall, and sentenced to life imprisonment. He appeals, and we affirm.[1]

Vickie Stegall was last seen alive on March 16, 1986. Her skeletal remains were found on June 22, 1986, in a wooded area in Fulton County.

Before the victim's disappearance, the victim and Leach had dated off and on for about two years and had lived together for several months in 1985 and 1986. Stegall's niece testified that, while the couple was living together, she had heard Leach tell Stegall he would kill her if she ever left him. A friend of Stegall's also testified that, at a New Year's party on December 31, 1985, she heard Leach tell the victim that if he could not have her, no one else could.

One of Stegall's sisters, Pam, related that, on January 25, 1986, she overheard Stegall tell Leach that she intended to move out of the house she shared with him. Pam then overheard an angry Leach tell Stegall to go ahead and leave, "I have a plan for you anyhow." Another of Stegall's sisters, Sandra, testified that Stegall moved to her mother's home on February 1. Sandra testified that between February 1 and March 16 Leach telephoned several times each day and stopped by frequently to see her. Stegall began dating Harry McBride soon after moving home, though apparently she continued dating Leach as well. Sandra related that Leach stated that he was hurt that Stegall would sleep with another man, and that she was driving him crazy. McBride and his roommate testified that Leach followed Stegall to their home and attempted to speak to her on at least two occasions.

At trial Leach denied killing Stegall. Leach testified that he last saw Stegall on Saturday, March 15, when he washed her car, but five witnesses said they saw the two together on Sunday afternoon, March 16, the day Stegall was last seen alive. Two of Stegall's neighbors testified that Stegall and Leach were parked next to each other in front of Stegall's home, conversing loudly, and three witnesses who lived

---

[1] Stegall's remains were found on June 22, 1986. Due to their condition, police were unable to ascertain the date of death. Leach was indicted for her murder on November 21, 1986. The state sought the death penalty. The guilt-innocence phase of the trial lasted from July 13, 1987, to July 20, 1987. The sentencing phase of the trial took place the following day. The jury found a statutory aggravating circumstance, OCGA § 17-10-30 (b) (7), but recommended that Leach receive a life sentence. On July 21, 1987, the trial court sentenced Leach to life in prison. Leach filed a motion for a new trial on August 10, 1987, which the trial court denied on August 8, 1988. Leach filed a notice of appeal to this court on August 18, 1988. The clerk docketed the appeal on September 14, 1988, and the case was submitted on briefs on November 8, 1988.

near Leach said they saw the pair leave Leach's apartment and drive away together in Stegall's car that same afternoon.

The police found a piece of curtain cord adjacent to Stegall's remains. The cord, according to the coroner, was looped and tied in such a way as to fit either her neck or her wrists. A police detective who searched Leach's apartment testified that he noticed that one of the windows in the apartment was missing part of its draw cord. Microscopic examination of this cord with the one found at the crime scene revealed sufficient similarity to conclude that the two "could have a common manufacturer." Police investigators also found bullet casings and projectiles near where Stegall's remains were found.

Due to the condition of the remains, the medical examiner was unable to determine the exact date, place or cause of death. However, he designated her death a murder, based on his examination of her remains and surrounding circumstances such as the location of the remains. He could not rule out strangulation or shooting as the cause of death.

An inmate who occupied the cell adjacent to Leach's at the Fulton County Jail testified that Leach told him he had killed Stegall. He said Leach told him that Stegall had moved out on him, and that before she moved money started disappearing from his house and she started staying out all night. In addition to telling the witness the location of Stegall's body, Leach also told him that he killed Stegall with a curtain cord, and that he retrieved some of the jewelry he had given her after killing her. According to the witness, Leach bragged that he would "beat this charge."

No jewelry was found on or near Stegall's body, though members of her family testified that she always wore a gold necklace and an engagement ring given to her by Leach. There was evidence that Leach pledged a necklace like that worn by Stegall for a small loan at a local pawn shop, and that Leach's brother reclaimed the necklace while Leach was in jail, two days before the pawn ticket was to expire.

1. Having reviewed the record in the light most favorable to the verdict, we conclude that a rational trier of fact could have found Leach guilty of murder beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. In his first enumeration of error, Leach argues that the trial court erred in allowing the state to seek the death penalty. Before trial Leach moved to prohibit the state from seeking the death penalty. He did so on the ground that the state's case, as he then understood it, did not adequately present any statutory aggravating circumstances, and that the state was seeking the death penalty merely to inflame the minds of the jury against Leach through voir dire so as to enhance its chances of a favorable guilt-innocence verdict. We find no merit to this argument, because the state's evidence, as presented at

trial, did warrant the submission to the jury of the OCGA § 17-10-30 (b) (2) and (b) (7) aggravating circumstances. Moreover, Leach offered no evidence that the death-qualification of the jurors inflamed or biased the jurors selected to try the case so as to render Leach's trial unfair. Finally, it appears that Leach may be arguing that the death-qualification of jurors leads to the selection of juries that are slanted in favor of conviction at the guilt-innocence phase of a death penalty trial. However, this contention has been resolved adversely to Leach. See *Ford v. State*, 257 Ga. 461, 464 (3) (360 SE2d 258) (1987); *Lockhart v. McCree*, 476 U. S. 162, 177-184 (106 SC 1758, 90 LE2d 137) (1986).

3. With regard to the appellant's second enumeration of error, we find that the trial court did not abuse its discretion in denying the appellant's motion for mistrial. *Wright v. State*, 253 Ga. 1 (3) (316 SE2d 445) (1984).

4. In his third enumeration of error, Leach argues that the trial court erred in admitting into evidence the statement he made to the police.[2] He contends that the statement was inadmissible because the police did not give him his *Miranda* warnings before taking his statement. The evidence introduced at the *Jackson-Denno* hearing showed that the police requested that a group of the victim's relatives and friends come to police headquarters for questioning. Leach was among this group. The officer who talked with Leach testified that Leach came to police headquarters voluntarily, and that Leach was not under arrest and was free to leave at any time. Following the interview, Leach left on his own. The trial court concluded that Leach was not in custody at the time of the interview, and that therefore *Miranda* did not apply. We cannot conclude that the trial court's factual and credibility findings are clearly erroneous, and we therefore conclude that the trial court did not err in admitting Leach's statement. *Hardeman v. State*, 252 Ga. 286, 287-288 (1) (313 SE2d 95) (1984); *Woods v. State*, 242 Ga. 277, 280-281 (248 SE2d 612) (1978).

5. In his fourth enumeration of error Leach contends that the trial court erred in denying a motion for mistrial that Leach made based on the trial court's failure to excuse two jurors for cause. We find no error. *Jefferson v. State*, 256 Ga. 821 (3) (353 SE2d 468) (1987); *Alderman v. State*, 254 Ga. 206 (5) (327 SE2d 168) (1985).

6. Leach contends, in his fifth enumeration, that the trial court erred in permitting witness Robert Sprayberry to testify. Leach contends that Sprayberry was not qualified to testify regarding the subject matter of his testimony and that, in addition, his testimony was

---

[2] In his statement Leach admitted to seeing the victim on March 15, but not on March 16, the day of her disappearance.

irrelevant. We disagree with both contentions, and conclude that the trial court did not err in permitting Sprayberry to testify.

7. In his sixth enumeration of error, Leach argues that the trial court erred by admitting evidence of similar crimes. However, we conclude that the trial court properly found that the state proved that Leach was the perpetrator of these crimes and further properly found that the crimes were relevant to prove, inter alia, Leach's state of mind and intent with regard to the crime for which he was on trial. See *Cameron v. State*, 256 Ga. 225, 227 (7) (345 SE2d 575) (1986).

*Judgment affirmed. All the Justices concur.*

DECIDED MARCH 2, 1989.

*L. David Wolfe*, for appellant.

*Lewis R. Slaton, District Attorney, Benjamin H. Oehlert III, Assistant District Attorney, Michael J. Bowers, Attorney General, Andrew S. Ree*, for appellee.