## S07A0516. STURGIS v. THE STATE.
### (646 SE2d 233)

SEARS, Chief Justice.

In 2005, a McDuffie County jury convicted Rochester Sturgis of malice murder, aggravated assault, and related offenses in connection with the shooting death of Bridget Vanessa Johnson. Sturgis appeals, arguing that the evidence presented at trial was insufficient to sustain his convictions and that he received ineffective assistance of counsel at trial. Finding no merit in Sturgis's arguments, we affirm.[1]

1. The evidence presented at trial would have enabled a rational trier of fact to find as follows. On the morning of November 4, 2003, Rochester Sturgis went uninvited to the home of Bridget Vanessa Johnson and her roommate, Kenny Kendrick. Sturgis, a smalltime loan shark in the area, had been friends with Johnson for years and had loaned her money from time to time. He also loaned money to Kendrick on occasion at 50% weekly interest. The owner of the house, Kendrick's mother, had previously told Sturgis on several occasions that he was not welcome there.

---

[1] Sturgis's crimes took place on November 4, 2003. On December 4, 2004, Sturgis was indicted for the malice murder of Johnson, felony murder of Johnson, aggravated assault on Johnson and two other individuals, possession of a firearm during the commission of the crimes, and possession of a firearm by a convicted felon. On March 24, 2005, a McDuffie County jury convicted Sturgis of malice murder, felony murder, aggravated assault against Johnson and one other person, and possession of a firearm during the commission of these crimes. The jury acquitted Sturgis on the remaining charges. Sturgis pled guilty to possession of a firearm by a convicted felon after submission of the other charges to the jury. In sentencing Sturgis, the trial court first vacated the felony murder conviction in light of the malice murder conviction as required by OCGA § 16-1-7, see *Perkinson v. State*, 273 Ga. 491 (1) (542 SE2d 92) (2001); *Malcolm v. State*, 263 Ga. 369 (4) (434 SE2d 479) (1993), and merged the conviction for aggravated assault against Johnson into the malice murder conviction. The trial court then sentenced Sturgis to life in prison for the malice murder of Johnson plus five additional years for possession of a firearm during the commission of the crime. The trial court sentenced Sturgis to fifteen years in prison for the aggravated assault on the other victim and specified that the sentence was to run concurrently with the life sentence but consecutively to the five-year sentence. The trial court sentenced Sturgis to two additional five-year terms, which the trial court specified could be served on probation, for possession of a firearm during the commission of certain crimes and possession of a firearm by a convicted felon.

Sturgis filed a motion for new trial on March 29, 2005. Two days later, his trial counsel filed a petition to withdraw because she was no longer the Public Defender for McDuffie County. On April 15, 2005, the trial court appointed replacement counsel for Sturgis, and on May 3, 2005, the trial court granted original counsel's petition to withdraw. The Superior Courts Sentence Review Panel affirmed Sturgis's sentence, and on June 12, 2006, Sturgis filed an amended new trial motion. The trial court denied the amended new trial motion on June 21, 2006. On July 14, 2006, Sturgis filed a timely notice of appeal but erroneously indicated that the case fell under the jurisdiction of the Court of Appeals. The Court of Appeals docketed the case on November 14, 2006, and entered an order transferring the case to this Court on December 11, 2006. The case was docketed in this Court on December 15, 2006, and submitted for decision on the briefs.

When Sturgis drove up, Johnson was in the kitchen preparing breakfast for herself, Kendrick, and one of their friends who was visiting, Kenneth Grant. Grant was relaxing on the sofa in the living room, and Kendrick was sitting outside on the porch. Sturgis demanded to know who was inside the house with Johnson. Kendrick was afraid Sturgis would become violent if he knew Johnson was in the house with another man, so he lied and said the other person in the house with Johnson was a woman named Loretta. Satisfied with this answer, Sturgis turned his vehicle around and left.

He returned shortly, however, after seeing Loretta walking down the street nearby. Sturgis confronted Kendrick about the lie, but once again, Kendrick was able to appease Sturgis, this time by agreeing to go for a ride with him. Kendrick then went back inside to change his shirt. When Kendrick emerged from his bedroom, Sturgis was standing inside the house. On seeing Grant, Sturgis said, "I done seen [sic] what I wanted to see." He ordered Johnson to take a ride with him, but she refused. Sturgis grabbed her by the wrists and started shaking her violently. Johnson said, "I told you, I don't want you. Leave me alone." Sturgis physically dragged Johnson towards the front door, and she stopped him only by bracing her feet against the door jamb.

Unable to wrench Johnson from her home, Sturgis said, "That's all right." He then went to his vehicle and returned with a gun. Johnson said over and over again that "It ain't [sic] what you think," but Sturgis simply cursed her, saying, "I told you . . . to take a ride with me." Johnson replied, "I ain't [sic] going nowhere with you," and Sturgis began waving the gun around the room. Gun in hand, Sturgis grabbed Johnson once again. When she managed to break free, Sturgis shot her one time in the chest, ending her life. Kendrick exclaimed, "[y]ou done shot [sic] her," to which Sturgis replied, "I meant to shoot her."

Sturgis then turned his attention to Kendrick and Grant. He pointed the gun in Grant's face and demanded to know the real reason he was there. Meanwhile, Kendrick ran to the back and tried to escape through a window, but it was nailed shut. He then hid under some clothes in a closet until Sturgis left. Grant insisted to Sturgis that he was only there to visit his friend and co-worker, Kendrick. This answer placated Sturgis, who said, "Well, I done shot [sic] her. You better go [sic] in there and see about her." Sturgis then left the house. He was arrested later that day.

The medical examiner determined that Johnson died from a single gunshot wound to the upper left chest. The bullet entered her chest and grazed her left lung and liver before perforating her heart and finally coming to rest in her spinal cord. Following Sturgis's arrest, the police retrieved a .38 caliber revolver from his vehicle. The weapon was fully loaded with the exception of one round.

Having reviewed the evidence in the light most favorable to the jury's verdict, we have no difficulty concluding that the evidence presented at trial was more than sufficient to enable a rational trier of fact to find Sturgis guilty beyond a reasonable doubt of the crimes for which he was convicted.[2]

2. On appeal, Sturgis argues that he received ineffective assistance of counsel for one reason only: because his trial counsel failed to listen to an audiotape of Sturgis's second interview with the Georgia Bureau of Investigation ("GBI") prior to trial.[3] In order to prevail on his ineffective assistance of counsel claim, Sturgis must show both that his counsel's performance was deficient and that but for counsel's unprofessional errors, there is a reasonable probability that the outcome of the trial would have been different.[4] As the trial court properly concluded, Sturgis utterly failed to make the required showing at the hearing on his amended new trial motion.

In support of his claim of ineffective assistance of counsel, Sturgis first relies on counsel's statement at the hearing on the amended new trial motion that "hindsight is 20/20." "[H]indsight," whether by a court, the defendant, or defendant's counsel, is a legally insufficient basis for concluding that counsel's performance at trial was deficient. As the United States Supreme Court has explained, "a fair assessment of attorney performance requires that every effort be made *to eliminate* the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective *at the time*."[5] Thus, defense counsel's offhand comment on cross-examination at the hearing on the amended new trial motion that "hindsight is 20/20" in no way supports an inference that her performance as Sturgis's trial counsel was deficient.

Sturgis also contends that trial counsel was ineffective because, according to Sturgis, she admitted at the hearing on the amended new trial motion that it was "unfortunate" that she did not listen to the GBI audiotape prior to trial. First, Sturgis's claim regarding trial counsel's alleged admission is totally false. What defense counsel described as "unfortunate" was Sturgis's decision, in the middle of trial, to claim for the first time that the second voice on the audiotape was not his when it plainly was and to accuse the GBI of having somehow fabricated his audiotaped responses to questioning, possibly by having someone impersonate his voice.

---

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[3] The audiotape was played for the jury at trial.

[4] *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984); *Jones v. State*, 279 Ga. 854, 855 (622 SE2d 1) (2005).

[5] *Strickland*, supra, 466 U. S. at 689 (emphasis supplied).

Second, Sturgis was the one who insisted that the audiotape be played at trial. He felt that his statements to the GBI shortly after the murder bolstered his claim that he killed Johnson in self-defense. Moreover, Sturgis's trial counsel was an experienced criminal defense attorney with approximately 150 to 200 criminal trials under her belt — including four or five murder cases on the defense side alone — when she undertook her representation of Sturgis. She prepared extensively for the trial and interviewed all of the State's witnesses. Of particular importance for the present discussion, she also reviewed a summary of the audiotaped interview prepared by the GBI prior to trial, and the summary was fully consistent with the account of the interview Sturgis himself had given her. Thus, we agree with the trial court that defense counsel's decision not to seek to obtain the audiotape from the GBI for review prior to trial fell well within "the wide range of professionally competent assistance" to which a defendant in a criminal case is constitutionally entitled.[6]

Finally, Sturgis does not advance any argument at all in support of his bald assertion that had defense counsel reviewed the audiotape prior to trial, there is a reasonable probability that the outcome of the trial would have been different, i.e., that the jury would have acquitted him on at least one of the crimes for which he was convicted. However, even if counsel had obtained and reviewed the GBI audiotape prior to trial, she would have had no way of knowing that Sturgis would spontaneously decide during cross-examination to try out a new defense rather than the one they had previously agreed on by questioning the tape's authenticity and leveling an obviously baseless charge of voice impersonation and evidence fabrication against the GBI. In any event, the evidence of Sturgis's guilt was overwhelming, with or without the admission of his audiotaped statements to the GBI and denial that the voice on the audiotape was his.

It is readily apparent from the record that defense counsel did an adequate job representing a difficult client in a case where the evidence of her client's guilt was well-nigh insurmountable. Sturgis failed to demonstrate either deficient performance on defense counsel's part or any resulting prejudice. Accordingly, the trial court properly rejected his ineffective assistance of counsel claim.

*Judgment affirmed. All the Justices concur.*

DECIDED JUNE 4, 2007.

*James T. Jones, Jr.,* for appellant.

---

[6] *Strickland,* supra, 466 U. S. at 690.

*Dennis C. Sanders, District Attorney, Durwood R. Davis, Assistant District Attorney, Thurbert E. Baker, Attorney General, Benjamin H. Pierman, Assistant Attorney General,* for appellee.