### S09A0324. WRIGHT v. THE STATE.
(677 SE2d 82)

HINES, Justice.

Kayla Ragan Wright appeals her convictions for malice murder, aggravated assault, and concealing the death of another, as well as the denial of a motion for new trial, all in connection with the death by suffocation of her newborn daughter, Angel Fryman Wright. She challenges the exclusion of certain alleged expert testimony; the voluntariness and reliability of what she characterizes as her "confession" and the alleged lack of evidence to corroborate it; the expert testimony regarding the cause or manner of the baby's death; the refusal to grant a mistrial following alleged improper cross-examination by the State; the effectiveness of trial counsel; and the failure to merge the aggravated assault conviction with that for malice murder. For the reasons that follow, we vacate the conviction and sentence for aggravated assault and affirm the remaining judgments of conviction.[1]

Wright's boyfriend, David Fryman, with whom she lived and had a son, worked as a mechanic and kept a Ford Thunderbird, which he used for spare parts, in their backyard. On December 3, 2004, the car was picked up from the yard and hauled to a salvage yard. During inspection of the vehicle at the salvage yard, a worker found a black trash bag containing a comforter on the floor behind the passenger's seat; alarmed by a "dead smell" coming from the bag, the worker opened it and found inside the partially decomposed body of an infant. The salvage yard owner telephoned a deputy with the Crisp County Sheriff's Department, who came to the scene. The Georgia Bureau of Investigation ("GBI") was notified and an agent also went to the salvage yard. In the early morning hours of December 4, 2004,

---

[1] The crimes occurred in October 2004. On May 9, 2005, a Crisp County grand jury indicted Wright for malice murder, felony murder while in the commission of aggravated assault, aggravated assault, and concealing the death of another. She was tried before a jury May 16-23, 2006, and found guilty of all charges. By sentences dated May 23, 2006, and filed of record on May 26, 2006, Wright was sentenced to life in prison for malice murder, a concurrent twenty years in prison for aggravated assault, and a concurrent ten years in prison for concealing the death of another; the felony murder stood vacated by operation of law. A motion for new trial was filed by trial counsel on June 1, 2006, and following the appointment of appellate counsel, an amended motion for new trial was filed on February 19, 2008. The motion for new trial, as amended, was denied on May 7, 2008. A notice of appeal was filed on June 6, 2008, and the case was docketed in this Court on November 10, 2008. The appeal was orally argued on February 9, 2009.

the GBI executed a search warrant at the Fryman-Wright residence. They found a sheet and pillowcases of similar design to the comforter in which the baby's body was found, a bleach stain on the carpet leading from the master bathroom, black garbage bags like the one containing the dead infant, and a pregnancy indicator test kit in the back of a dresser drawer.

Following execution of the search warrant, Wright was transported to the sheriff's office where she was interviewed by a GBI agent. During this first interview, Wright admitted that the found infant was hers, that she had delivered the baby into a toilet, and that the baby had been in the car about a month and a half when it was found; she maintained that she did not know that she was pregnant, and that the baby was not breathing when she was born. During a second interview, Wright acknowledged that she knew she was pregnant before the birth and after the GBI agent told Wright that an autopsy would be conducted on the baby and that the autopsy could reveal whether the baby was breathing, and therefore, alive at birth, Wright admitted that she observed the baby breathing and whimpering, and that the baby was still breathing when she placed her in the blanket. She stated that she did not want to have another child and could not afford to do so. Wright apologized for not being truthful in the first interview.

During the summer of 2004, Fryman and his mother observed that Wright appeared to be pregnant. In fact, in August or September 2004, Fryman asked Wright if she was pregnant and she denied that she was. Pursuant to a search warrant, Wright was examined by an obstetrician/gynecologist who determined that Wright had given birth in middle to late October 2004.

The medical examiner determined that the female infant had a gestational age of at least 34 weeks, and testified that clinically an infant is considered to be full-term at 36 weeks and beyond, and that a baby born at 34 weeks would be "mildly" premature. Because the infant's body was so badly decomposed, the medical examiner had to consider the investigative information as well as the findings from the autopsy to determine the cause of death; he concluded that the infant died from mechanical asphyxiation, commonly referred to as suffocation.

1. Wright contends that the trial court erred in excluding testimony from her proffered expert witness on police interrogation techniques and false confessions because it would have aided the jury in evaluating the reliability of her inculpatory custodial statement.

The defense attempted to call as an expert witness Hunter, who then worked as an investigator in defense counsel's office. The State objected and moved to exclude Hunter's testimony based on the

defense's failure to provide timely notice, see OCGA § 17-16-8 (a),[2] and to comply with OCGA § 17-16-4 (b) (2).[3] Wright's trial began on May 16, 2006, and four days before, on May 12, the defense informed the State that it might call Hunter as a witness, but did not disclose that it would call him as an expert witness. It was not until the day after trial began, May 17, that the defense filed an amendment to its witness list, stating that Hunter "would offer expert testimony regarding false statements and inappropriate improper interrogation techniques"; Wright attempted to call Hunter to testify on May 19, 2006. After taking the matter under advisement over the weekend recess of trial, the trial court ruled that it would not allow Hunter's testimony; it cited the fact that the State was not timely notified that Hunter would testify as an expert witness and noted that the area in which Hunter would express his opinion had not reached a level of scientific reliability so as to allow it. Even though it ruled in favor of the State, the trial court permitted the defense to make a proffer regarding Hunter's testimony. The proffer showed that the defense intended Hunter to testify about an interrogation technique it referred to as the "Reid method," and its alleged misapplication by the interviewer in Wright's case.

First, when a defendant fails to comply with discovery requirements under OCGA § 17-16-1 et seq., and specifically that of witness disclosure, the trial court may, under certain circumstances, prohibit the defendant from presenting the witness not disclosed.

---

[2] OCGA § 17-16-8 (a) states:

The prosecuting attorney, not later than ten days before trial, and the defendant's attorney, within ten days after compliance by the prosecuting attorney but no later than five days prior to trial, or as otherwise ordered by the court, shall furnish to the opposing counsel as an officer of the court, in confidence, the names, current locations, dates of birth, and telephone numbers of that party's witnesses, unless for good cause the judge allows an exception to this requirement, in which event the counsel shall be afforded an opportunity to interview such witnesses prior to the witnesses being called to testify.

[3] OCGA § 17-16-4 (b) (2) provides:

The defendant shall within ten days of timely compliance by the prosecuting attorney but no later than five days prior to trial, or as otherwise ordered by the court, permit the prosecuting attorney at a time agreed to by the parties or as ordered by the court to inspect and copy or photograph a report of any physical or mental examinations and of scientific tests or experiments, including a summary of the basis for the expert opinion rendered in the report, or copies thereof, if the defendant intends to introduce in evidence in the defense's case-in-chief or rebuttal the results of the physical or mental examination or scientific test or experiment. If the report is oral or partially oral, the defendant shall reduce all relevant and material oral portions of such report to writing and shall serve opposing counsel with such portions no later than five days prior to trial. Nothing in this Code section shall require the disclosure of any other material, note, or memorandum relating to the psychiatric or psychological treatment or therapy of any defendant or witness.

OCGA § 17-16-6;[4] *Acey v. State,* 281 Ga. App. 197, 199 (2) (635 SE2d 814) (2006); *Clark v. State*, 271 Ga. App. 534, 536 (610 SE2d 165) (2005). However, pretermitting the question of the propriety of excluding Hunter's testimony because of discovery violations by the defense, there was no showing that "false confession theory" and the "Reid method" satisfied the evidentiary test in criminal cases set forth in *Harper v. State*, 249 Ga. 519 (1) (292 SE2d 389) (1982). See *Vaughn v. State*, 282 Ga. 99, 101 (3) (646 SE2d 212) (2007); *Lyons v. State*, 282 Ga. 588, 595 (5) (652 SE2d 525) (2007) (overruled on other grounds); *Riley v. State*, 278 Ga. 677, 682 (4) (604 SE2d 488) (2004).

2. Wright contends that it was error to admit into evidence her "confession," i.e., the statement in which she acknowledged that her baby was breathing and whimpering after birth, because it was neither voluntary nor reliable; she argues that this is so because of the conditions surrounding the interrogation, because the interrogation technique used elicited an unreliable confession as would have been shown by Hunter's testimony, because the confession was obtained by the police implying that her confession would protect Fryman, and because her symptoms of post-traumatic stress disorder and her desire to please authority figures led her to give a false confession.

First, the exclusion of Hunter's testimony about police techniques and false confessions was not error. See Division 1, supra. Furthermore, following a *Jackson v. Denno*[5] hearing and the trial court's viewing of the videotapes of Wright's police interviews, the trial court ruled that Wright's statements were given freely and voluntarily.[6] After a trial court makes the determination that a defendant's statement is freely and voluntarily given in compliance

---

[4] OCGA § 17-16-6 provides:

If at any time during the course of the proceedings it is brought to the attention of the court that the state has failed to comply with the requirements of this article, the court may order the state to permit the discovery or inspection, interview of the witness, grant a continuance, or, upon a showing of prejudice and bad faith, prohibit the state from introducing the evidence not disclosed or presenting the witness not disclosed, or may enter such other order as it deems just under the circumstances. If at any time during the course of the proceedings it is brought to the attention of the court that the defendant has failed to comply with the requirements of this article, the court may order the defendant to permit the discovery or inspection, interview of the witness, grant a continuance, or, upon a showing of prejudice and bad faith, prohibit the defendant from introducing the evidence not disclosed or presenting the witness not disclosed, or may enter such other order as it deems just under the circumstances. The court may specify the time, place, and manner of making the discovery, inspection, and interview and may prescribe such terms and conditions as are just.

[5] *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964).

[6] Wright's offered evidence of post-traumatic stress disorder and her desire to please authority figures was not before the trial court during the *Jackson v. Denno* proceeding.

with *Jackson v. Denno*, the trial court may properly allow the statement into evidence. *Hurt v. State*, 239 Ga. 665, 669 (2) (238 SE2d 542) (1977). And following a *Jackson v. Denno* hearing, this Court will not disturb the trial court's factual and credibility determinations unless they are clearly erroneous. *Cook v. State*, 270 Ga. 820, 824 (2) (514 SE2d 657) (1999). Here, the jury viewed the videotapes of Wright's police interviews, and therefore, it was able to see for itself the circumstances under which Wright made her statements. As to the assertion that Wright's statements were encouraged by threats, including that the investigation would turn to her boyfriend, so as to run afoul of OCGA § 24-3-50,[7] it is of no merit. "Under OCGA § 24-3-50, the 'remotest fear of injury' that renders a confession involuntary and inadmissible is 'physical or mental torture.' " *Wilson v. State*, 285 Ga. 224, 228 (3) (675 SE2d 11) (2009). Considering the totality of the circumstances, the admission of the contested statements was not error. *Ruffin v. State*, 265 Ga. 808 (2) (463 SE2d 11) (1995).

3. Wright next contends that her "confession" is not legally sufficient to support her convictions because the State failed to produce independent evidence to corroborate it as required by OCGA § 24-3-53.[8] But, such contention is without merit.

A "confession" is distinct from an admission in that "a confession acknowledges all of the essential elements of the crime." *Walsh v. State*, 269 Ga. 427, 429 (1) (499 SE2d 332) (1998). Pretermitting the question of the accuracy of the characterization of either of Wright's statements alone or collectively as a "confession," certainly, the State could not rely solely on Wright's statements to prove its case; if Wright made an admission, the State had to present additional direct or circumstantial evidence of her guilt, or if she is deemed to have made a confession, the State had to introduce corroborating evidence. Id. at 429-430 (1). In either circumstance, the State met its burden. The evidence of Wright's guilt, and that which corroborated her statements, included, but was not limited to, the recovered physical evidence and the witness testimony regarding Wright's comments, appearance, and behavior before and after the victim's birth. See *Sheffield v. State*, 281 Ga. 33, 34 (1) (635 SE2d 776) (2006).

---

[7] OCGA § 24-3-50 provides:
To make a confession admissible, it must have been made voluntarily, without being induced by another by the slightest hope of benefit or remotest fear of injury.

[8] OCGA § 24-3-53 states:
All admissions shall be scanned with care, and confessions of guilt shall be received with great caution. A confession alone, uncorroborated by any other evidence, shall not justify a conviction.

The evidence was sufficient to enable a rational trier of fact to find Wright guilty beyond a reasonable doubt of the crimes for which she was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

4. Wright contends that the trial court erred in allowing the medical examiner, Dr. Clark, to testify about the cause or manner of the baby's death because his opinion was based solely on Wright's inculpatory statements made during the police interrogations rather than on his own medical knowledge or scientific examination. But, that is not so.

First, in attempting to determine the cause of death, a medical examiner may consider the circumstances surrounding the death; indeed, such consideration may be necessary based upon the condition of the remains, as in this case. See *Leach v. State*, 259 Ga. 33, 34 (376 SE2d 667) (1989); see also *Bethea v. State*, 251 Ga. 328, 331 (304 SE2d 713) (1983). Furthermore, contrary to Wright's contention, the medical examiner's opinion as to the cause of the infant's death was not based solely on Wright's statements; it was based upon his autopsy findings as well. Dr. Clark testified that in reaching the conclusion that the infant died from suffocation, he considered the investigative history in conjunction with the fact that he found, from the autopsy, no other cause for the child's death.

5. During cross-examination of a defense witness, the prosecutor asked, "Would it surprise you to learn, sir, that in this case a live birth certificate was issued?" Wright contends that a mistrial was required because the prosecutor alluded to a certificate of live birth not in evidence. However, the contention is unavailing.

Wright's attorneys objected to the prosecutor's question on the basis, inter alia, that it assumed facts not in evidence. The trial court sustained the objection and stated that it would instruct the jury to disregard in its entirety any statement regarding a certificate of live birth. The defense moved for a mistrial, and the motion was overruled. Then, as it indicated it would, the trial court gave the jury a curative instruction. The defense did not then renew its motion for mistrial. Consequently, because there was no timely renewal of the motion for mistrial, Wright cannot now complain of the failure to grant a mistrial. *Ford v. State,* 269 Ga. 139, 141 (3) (498 SE2d 58) (1998). In any event,

> [w]hen prejudicial matter is improperly placed before the jury, a mistrial is appropriate if it is essential to the preservation of the defendant's right to a fair trial. Whether the statements are so prejudicial as to warrant a mistrial is within the trial court's discretion.

*Agee v. State,* 279 Ga. 774, 777 (4) (621 SE2d 434) (2005) (citations omitted). In this case, it would be difficult to find an abuse of the trial court's discretion for refusing to grant a mistrial based upon the allusion to a certificate of live birth inasmuch as the medical examiner had already rendered the opinion that the infant had died from mechanical asphyxiation, which plainly informed the jury that the birth was live. As to Wright's additional complaint that the prejudicial effect of the prosecutor's question was compounded because the trial court insisted that the motion for mistrial be argued in the presence of the jury, assuming arguendo that the jury was able to hear the bench conference at which the defense argued its motion, the jury would also have heard the prosecutor state that she did not have a certificate of live birth.

6. Wright asserts that her trial attorneys provided constitutionally ineffective assistance of counsel in several respects. However, in order to prevail on her claims of ineffectiveness, Wright must demonstrate that her attorneys' performance was deficient and that such deficiency prejudiced her to the extent that a reasonable probability exists that, but for counsel's errors, the outcome of her trial would have been different; what is more, there exists the strong presumption that counsel's conduct falls within the broad range of professional conduct. *McKenzie v. State,* 284 Ga. 342, 346 (4) (667 SE2d 43) (2008).

(a) Wright contends that her attorneys were ineffective by strongly advising her not to testify at trial, and consequently, by failing to prepare her to testify, thereby constructively denying her right to do so.

The record shows that the trial court painstakingly and correctly informed Wright that it was solely her decision whether to testify and that counsel could not make that decision for her. See *Harris v. State,* 279 Ga. 304, 308 (3) (e) (612 SE2d 789) (2005). Wright affirmed that it was her personal decision not to testify. As to Wright having made such decision after being advised to do so by counsel, defense attorneys are given wide discretion in specific decisions regarding trial strategy, and in particular the decision as to which witnesses should be called to testify. *Simpson v. State,* 277 Ga. 356, 358 (4) (c) (589 SE2d 90) (2003). At the hearing on the motion for new trial, both of Wright's trial attorneys testified that they advised her not to testify out of tactical concerns; collectively they testified that they did so because they believed Wright to be easily influenced and had seen what a law enforcement officer had been able to elicit from her, and thus, impliedly were afraid of what the State could elicit from Wright on cross-examination. Inasmuch as counsel's goal was to keep Wright from taking the stand, counsel cannot be found to have been deficient for any failure to prepare Wright to testify.

*Harvey v. State*, 284 Ga. 8, 11 (4) (b) (660 SE2d 528) (2008). Wright cannot now complain about her own election to follow the reasonable tactical advice of her attorneys. *Simpson v. State*, supra at 358 (4) (c). The fact that in hindsight trial counsel might regret the decision to refrain from placing Wright on the stand[9] does not support the claim of ineffectiveness.

> [H]indsight, whether by a court, the defendant, or defendant's counsel, is a legally insufficient basis for concluding that counsel's performance at trial was deficient. As the United States Supreme Court has explained, a fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.

*Sturgis v. State*, 282 Ga. 88, 90 (2) (646 SE2d 233) (2007) (citations and punctuation omitted).

(b) Wright next claims that her attorneys were ineffective by "failing to more fully oppose the admission of her uncounseled confession"; specifically, she maintains that she was denied a fair hearing and reliable determination on the issue of voluntariness because her attorney appearing at the *Jackson v. Denno* proceedings was not sufficiently prepared or experienced and failed to call witnesses including experts, her attorneys should have moved to have the opinions of the interrogators redacted from her statements, and her attorneys should have introduced evidence about her state of mind at the time that she made her inculpatory statements.

At the *Jackson v. Denno* hearing, defense counsel extensively cross-examined the agent who had interrogated Wright, questioning him about the conditions under which Wright was brought in for the interviews, including Wright's physical condition, and persistently asking the agent about the circumstances surrounding Wright's change of story about the baby's viability at birth. See *Posley v. State*, 264 Ga. App. 869, 870-871 (1) (b) (592 SE2d 504) (2003). As to counsel's decision not to call witnesses at the hearing, including Wright herself, Hunter, or another expert such as an expert in trauma, here again the decision of what witnesses to call was a matter of trial strategy. *Simpson v. State*, supra at 358 (4) (c). The decision not to call Wright cannot be found to be unreasonable inasmuch as counsel feared her inability to withstand cross-

---

[9] At the hearing on the motion for new trial, counsel expressed second thoughts about not having Wright tell the jury her version of events.

examination. See Division 6 (a), supra. Nor can the decisions regarding the now-offered expert witnesses be found to be deficient. Wright has failed to demonstrate that Hunter's testimony would satisfy the evidentiary test of *Harper v. State*, 249 Ga. 519 (1) (292 SE2d 389) (1982). See Division 1, supra. Furthermore, the possibility of calling a trauma expert to testify about Wright's state of mind at the time of the interrogations, namely, to testify that Wright had suffered sexual abuse as a child, was not considered by counsel, and Wright has not demonstrated that it should have been; she fails to show that prior to trial, counsel knew or should have known of any alleged childhood abuse which might prove relevant. Here again, the benefit of hindsight cannot be used to demonstrate the ineffectiveness of trial counsel. *Sturgis v. State*, supra at 90 (2).

Furthermore, regarding Wright's complaint that her trial attorneys did not ask for redaction of the officers' comments from her inculpatory statements, at the hearing on her motion for new trial, Wright did not adduce any evidence in support of this claim. Absent such proffer, this claim of ineffective assistance of trial counsel fails. *Daniels v. State*, 296 Ga. App. 795 (676 SE2d 13) (2009). What is more, counsel testified that the focus of the defense was not Wright's statements but rather the scientific and medical evidence.

(c) Wright also urges that her trial counsel acted ineffectively by failing to provide adequate notice of its expert witness, Hunter, who was then barred from testifying and whose testimony would have aided the jury in evaluating her statements to police. Pretermitting whether the shortened notice constitutes a deficiency on the part of counsel, Wright cannot demonstrate that timely notice would have resulted in a different outcome at trial. *McKenzie v. State*, supra at 346 (4). There has been no showing that Hunter's testimony would have been admissible. See Division 1, supra.

7. Finally, as Wright contends, her conviction and sentence for aggravated assault must be vacated inasmuch as the evidence shows that the aggravated assault merges as a matter of fact with the malice murder conviction. *Williams v. State*, 277 Ga. 368, 369 (2) (589 SE2d 563) (2003). Compare *McCloud v. State*, 284 Ga. 665, 666 (3) (670 SE2d 784) (2008).

*Judgments affirmed in part and vacated in part. All the Justices concur.*

DECIDED APRIL 28, 2009 —
RECONSIDERATION DENIED JUNE 1, 2009.

*Sarah L. Gerwig-Moore*, for appellant.
*Denise D. Fachini, District Attorney, Cheri L. Nichols, Barbara A. Becraft, Assistant District Attorneys, Thurbert E. Baker, Attorney*

*General, Amy E. Hawkins Morelli, Assistant Attorney General*, for appellee.