303 Ga. 165
FINAL COPY

S17A1599. FRANKLIN v. THE STATE

BENHAM, Justice.

This case presents the issue of whether a trial court has authority to dismiss a prosecutor's notice of intent to seek the death penalty prior to trial. This issue previously has been decided adversely to appellant's position, and for the reasons set forth below, we are not persuaded to change this Court's longstanding ruling on the issue.

Appellant Tracen Lamar Franklin was 18 years old at the time of the events involved in this case. He was one of four young men indicted for malice murder and felony murder (predicated on aggravated assault) for beating and kicking to death Bobby Tillman after a teen party. Viewed in the light most favorable to the verdict, the evidence showed a general brawl broke out after the party. One of the co-indictees was angry about being

struck by a female and declared he was going to hit the first man he saw. The co-indictee ran up to Tillman, who was standing passively by a car, and started punching him. Several trial witnesses identified Franklin as one of three others who joined in, and the four men severely beat, kicked, and stomped Tillman, who was later pronounced dead at the hospital as a result of a ruptured right ventricle of the heart caused by blunt impact.

The Douglas County District Attorney sent a letter to counsel for each co-indictee offering a 90-day window to negotiate the case before he intended to file a notice of intent to seek the death penalty. The death penalty was sought against Franklin, and the trial court denied Franklin's pre-trial motion to strike the death penalty notice, in which Franklin sought an evidentiary hearing to prove the alleged aggravating circumstances were not supported by the evidence. The case proceeded to trial, and the jury returned a guilty verdict on both counts after deliberating for 90 minutes. The trial court again addressed the motion to quash the death penalty and denied it in part, ruling that evidence was presented from which the jury could find one of the aggravating circumstances set forth in the State's notice, thereby permitting the case to proceed to the sentencing phase. After a period of jury

2

deliberation, the trial court declared the jury to be deadlocked on the issue of punishment. The trial court then sentenced Franklin to life without parole. The trial court denied Franklin's motion for new trial.[1]

1. Although Franklin does not challenge the sufficiency of the evidence to convict him, it is this Court's practice to conduct an examination of the record to determine the legal sufficiency of the evidence in murder cases. Having done so, we conclude the evidence presented at trial and summarized above was sufficient to authorize a rational trier of fact to find Franklin guilty beyond a reasonable doubt of the crime of which he was convicted. See *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

---

[1] The crimes occurred on November 6, 2010. On November 19, 2010, a Douglas County grand jury returned an indictment charging appellant with malice murder as well as felony murder predicated on aggravated assault by beating the victim with fists and kicking him with shoe clad feet. The State filed a written notice on November 11, 2011, of its intent to seek the death penalty. Appellant's bifurcated trial commenced on August 13, 2012, and on September 12, 2012 the jury found appellant guilty on all counts. The penalty phase of the trial commenced on September 13, 2012. On September 21, 2012, the trial court ruled that the jury was deadlocked as to punishment. A sentencing hearing was held on September 28, 2012, after which the trial court sentenced appellant to life without the possibility of parole with respect to the guilty verdict for the murder charge, and the guilty verdict for the felony murder charge was vacated by operation of law. Appellant filed a timely motion for new trial on October 24, 2012, which was later amended. Following a hearing, the trial court denied the motions for new trial by order dated May 13, 2016. Appellant filed a timely notice of appeal, and the case was docketed in this Court to the August 2017 term. The case was orally argued on October 16, 2017.

2. After filing a notice of intent to seek the death penalty, the State filed a notice of three statutory aggravating circumstances which, according to the State, would support the imposition of the death penalty. Citing OCGA § 17-10-30 (b) (7), the State alleged first that the murder was outrageously and wantonly vile, horrible and inhuman in that the murder involved an aggravated battery to the victim, and secondly that it involved depravity of mind. Citing OCGA § 17-10-30 (b) (2), the State alleged the murder was committed while the defendant was engaged in the commission of an aggravated battery to the victim.[2] Prior to trial, Franklin moved to dismiss and exclude the notice of statutory aggravating circumstances on the ground that the facts alleged in the indictment and the evidence reflected in the

---

[2] The aggravating circumstances for imposing the death penalty are set forth in OCGA § 17-10-30, and include, in pertinent part:

. . .

(b) In all cases of . . . offenses for which the death penalty may be authorized, the judge shall consider, or he shall include in his instructions to the jury for it to consider, . . . any of the following statutory aggravating circumstances which may be supported by the evidence:

. . .

(2) The offense of murder . . . was committed while the offender was engaged in the commission of another capital felony or aggravated battery . . . ;

. . .

(7) The offense of murder . . . was outrageously or wantonly vile, horrible, or inhuman in that it involved torture, depravity of mind, or an aggravated battery to the victim . . . .

4

autopsy report were insufficient to establish the statutory aggravating circumstances necessary to support the imposition of the death penalty in the event he were convicted of murder. After a hearing at which the trial court refused to admit expert testimony about the autopsy report, the court denied the motion, stating that a trial court lacks authority to rule prior to trial that the State cannot prove its case for imposing the death penalty. The trial court considered the motion again after the close of the evidence in the guilt-innocence phase of the trial for purposes of determining whether the imposition of the death penalty should be submitted to the jury, and again the court denied it in part.

On appeal, Franklin asserts the prosecutor sought the death penalty in this case in bad faith, in an attempt to improve the odds of a conviction by seating a death-qualified jury. Even though the death penalty was not imposed, Franklin argues that this Court should grant a new trial where a bad faith purpose for seeking the death penalty is shown. He argues that bad faith is demonstrated in this case because, pursuant to the notice of statutory aggravating circumstances and the evidence the State could (and ultimately did) present in support of these circumstances, he was not eligible for the

5

death penalty as a matter of law. Franklin recognizes it would be moot to assert as error that the evidence actually presented at trial was insufficient to support the death penalty because the death penalty was not imposed. Nevertheless, he asserts that the alleged insufficiency of the evidence presented at trial is relevant to demonstrate that sufficient evidence was lacking prior to trial, and thus the trial court erred in denying his pre-trial motion and permitting the case to proceed as a death penalty trial and permitting the jury to be death-qualified. Accordingly, Franklin argues, the trial court abused its discretion to spare him from having to endure a death penalty trial, and thereby violated his constitutional rights to a fair proceeding before a representative and unbiased jury.

Franklin complains that the trial court wrongly assumed it had no authority to determine prior to trial whether the aggravating circumstances alleged by the State would be sufficiently proved by the evidence to support the imposition of the death penalty. In support of his assertion that the trial court possesses such authority, Franklin points to cases in which this Court has examined factual and legal issues raised by a defendant's pre-trial motion to quash the State's notice of intent to seek the death penalty. But those

6

cases addressed, for example, the legal sufficiency of the allegations in the notice of intent to state a basis for the imposition of the death penalty; they did not approve a pre-trial determination of whether the facts a defendant expected to be established at trial would prove, or not, the State's allegations. See *Leach v. State*, 259 Ga. 33, 34 (2) (376 SE2d 667) (1989) (rejecting the appellant's assertion that the trial court erred in failing to grant a pre-trial motion to prevent the State from seeking the death penalty "on the ground that the state's case, as he then understood it, did not adequately present any statutory aggravating circumstances, and that the state was seeking the death penalty merely to inflame the minds of the jury against [him] through voir dire so as to enhance its chances of a favorable guilt-innocence verdict"); *State v. Terry*, 257 Ga. 473 (1) (360 SE2d 588) (1987) (addressing whether the aggravating circumstances of OCGA § 17-10-30 (b) (1), relating to the defendant's status as a previously convicted capital felon, could legally be established only by the defendant's status at the time he committed the crime charged or by his status at the time of sentencing).

In fact, the allegations asserted in the notice of aggravating circumstances filed in this case would support the imposition of the death

penalty if they were proved at trial. In his motion to quash the notice of aggravating circumstances, Franklin asked the trial court to make a pre-determination of factual issues. Factual disputes, however, are to be resolved by a jury where, as here, the defendant sought a trial by jury. That rule applies to factual disputes regarding proof of aggravating circumstances for the imposition of the death penalty, just as it applies to factual disputes regarding proof of the elements of the crimes charged. Franklin points to no authority under Georgia law for his argument that factual disputes relating to statutory aggravating circumstances for the imposition of the death penalty may be determined by the judge prior to trial. Franklin asserts, however, that the pre-trial determination of whether the death penalty may be sought in a murder case has been approved by the courts of certain other states, and he urges this Court to follow suit. But as this Court has stated, in Georgia a prosecutor's discretion to seek the death penalty is limited by the statute defining the aggravating factors that must be shown to impose the death penalty, as well as the jury's decision, based on the evidence, of whether to impose it. *Wagner v. State*, 282 Ga. 149, 152 (5) (646 SE2d 676) (2007). And

8

this Court has repeatedly rejected challenges to the legislature's determination that district attorneys should have the discretion to decide whether a murder defendant meets the statutory criteria for the death penalty and whether to pursue the death penalty when a defendant is eligible.

(Citation and punctuation omitted.) Id. Except in cases in which the death penalty notice is challenged on legal grounds (which was not the basis for the challenge in this case), and not factual ones, we decline to adopt the views of what appears to be a minority of states that a prosecutor's decision to pursue the death penalty is subject to pre-trial review.[3]

Moreover, the assertion that "the death-qualification of jurors leads to the selection of juries that are slanted in favor of conviction at the guilt-innocence phase of a death penalty trial" has been resolved adversely to Franklin. *Leach v. State*, supra, 259 Ga. at 35 (2), citing *Lockhart v. McCree*,

---

[3] We note that one of the cases relied upon by appellant as an example of a court that has approved pre-trial determination of whether a death penalty notice may be dismissed actually involved a legal, and not a factual, challenge to the death penalty notice. See *Reed v. State*, 496 S2d 213, 214 (Fla. Dist. Ct. App. 1986) (holding the trial court should have granted the defendant's pre-trial motion to preclude the death-qualification of the jury because the death penalty was not legally available as punishment under the theory of felony murder pursued by the prosecution, and that since a number of otherwise qualified jurors were eliminated from participating in the trial, the court could not conclude the error was harmless). Also, even though Franklin argued at oral argument before this Court that Connecticut was a state that permitted the pre-trial vetting of a prosecutor's notice of intent to pursue the death penalty, according to our research, it appears that prior to the Connecticut Supreme Court's invalidation of the death penalty (see *State v. Santiago*, 122 A3d 1 (Conn. 2015)), that court clearly held that "as a general rule, a capital defendant is not entitled to any . . . prepenalty phase determination with respect to the evidentiary sufficiency of the aggravating factors alleged by the state." *State v. Reynolds*, 836 A2d 224, 299 (B) (2) (Conn. 2003).

9

476 U. S. 162, 177-184 (106 SCt 1758, 90 LE2d 137) (1986). See also *Brockman v. State*, 292 Ga. 707, 719 (7) (d) (739 SE2d 332) (2013); *Riley v. State*, 278 Ga. 677, 685 (6) (B) (604 SE2d 488) (2004); *Brannan v. State*, 275 Ga. 70, 79 (10) (561 SE2d 414) (2002); *DeYoung v. State*, 268 Ga. 780, 790 (11) (493 SE2d 157) (1997). Despite Franklin's reliance on social science research for the proposition that removing otherwise qualified jurors from the panel based on their opposition to the death penalty skews the jury in favor of the prosecution on the threshold issue of guilt, we are not persuaded to reverse our longstanding conclusion on this issue.

3. Franklin also asserts the trial court improperly denied his motion to dismiss the indictment on the ground that the grand jury that indicted him was drawn from a grand jury pool that systematically underrepresented blacks and overrepresented whites, in violation of the Sixth and Fourteenth Amendments. He claims this was a result of a selection process known as "forced balancing" the pool to the most recent decennial census for the county. Citing *Ricks v. State*, 301 Ga. 171 (800 SE2d 307) (2017), Franklin argues that due to Douglas County's quickly changing racial demographics, this practice left the racial proportions of the jury pool significantly out of

10

line with the demographics of the county at the time the grand jury pool was selected, which was more than ten years from the date of the latest available census taken in 2000. At the time of Franklin's indictment in November 2010, however, the Jury Composition Reform Act of 2011, Ga. L. 2011, pp. 59, 69-70, § 1-16, that replaced the forced balancing approach to creating grand and traverse jury pools, had not yet taken effect, as the effective date of that Act was July 1, 2011. See also Ga. L. 2012, pp. 173, 199, § 3-2. Instead, the forced balancing method to form lists from which the grand jury was summoned at the time Franklin was indicted was effectively required under the then-applicable version of the Unified Appeal procedure promulgated by this Court to guide trial courts in the administration of death penalty cases. See *Ellington v. State*, 292 Ga. 109, 118 (4) (735 SE2d 736) (2012). Furthermore, it is undisputed that the results of the 2010 decennial census had not yet been published at the time the grand jury pool that indicted Franklin was selected. Nevertheless, Franklin argues that 2008 and 2009 official census estimates were available at the time his grand jury pool was selected, and they could have been employed to arrive at a pool that was more accurately balanced by racial composition.

11

In *Williams v. State*,[4] a case that also pre-dated the effective date of the Jury Composition Reform Act and which was decided just before this grand jury pool was certified, this Court examined a similar argument to a jury pool that had been force-balanced to the most recently available decennial census rather than to more current demographics of the county in which the defendant was to be tried. In the opinion affirming the trial court's denial of the defendant's constitutional challenge, we acknowledged that even though the previously approved procedure of force-balancing to the most recently available decennial census could create temporary anomalies as census reports age, we concluded "the ill done by those temporary anomalies is outweighed by the other benefits of the procedure." Id. at 738 (2). Franklin urges that this Court should not affirm the denial of his motion to dismiss the indictment in this case because the demographic discrepancies between the grand jury pool and the county's population in this case were greater than those involved in *Williams*, but we reject that argument.

Judgment affirmed.  All the Justices concur.

---

[4] 287 Ga. 735 (699 SE2d 25) (2010).

12

Decided February 5, 2018 — Reconsideration denied March 5, 2018.

Murder. Douglas Superior Court. Before Judge McClain.

Jerilyn L. Bell, Josh D. Moore, Gerald P. Word, for appellant.

Brian K. Fortner, District Attorney, Emily K. Richardson, Sean A. Garrett, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Matthew B. Crowder, Assistant Attorney General, for appellee.