A12A0236. SHELL v. THE STATE.
(727 SE2d 243)

MCFADDEN, Judge.

After a bench trial, Jeremy Shell was convicted of trafficking in cocaine. See OCGA § 16-13-31. He argues on appeal that the trial court erred in denying his motion to suppress evidence of the cocaine, which was found when a law enforcement officer searched his car during a traffic stop. Because the evidence demonstrated that the officer was authorized to stop the car and to search containers found therein, we affirm.

On reviewing a trial court's ruling on a motion to suppress, evidence is construed most favorably to uphold the findings and judgment, and the trial court's findings on conflicting evidence should not be disturbed if there is any evidence to support them. *Tate v. State*, 264 Ga. 53, 54 (1) (440 SE2d 646) (1994). But "where the evidence is uncontroverted and no question regarding the credibility of witnesses is presented, the trial court's application of the law to undisputed facts is subject to de novo appellate review." (Citations omitted.) *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474) (1994).

So construed, the evidence showed that on January 28, 2010, a law enforcement officer observed a car being driven by Shell in the center lane of Interstate 20. The speed limit was 65 miles per hour, and Shell initially was traveling at about 60 miles per hour. When Shell approached the location where the officer's marked patrol vehicle stood, he quickly reduced his speed to about 50 miles per hour. The officer described the lane in which Shell was driving as the

"tractor-trailer passing lane," because on that portion of the highway tractor-trailers were not allowed to use the left lane. The officer testified that when he saw Shell

> there was a pack of cars behind him including a couple of tractor-trailers in the center lane and there were tractor-trailers and passenger cars also in the right lane and Mr. Shell's vehicle was traveling below the speed limit. . . . As the vehicles approached, I expected him to move over and allow those faster moving tractor-trailers to pass because he was underneath the speed limit and he had ample opportunity to do so, but it didn't happen.

The officer further testified that Shell's car

> was the lead car in the center lane. There were no vehicles in front of him and there were no obstructions in front of him to cause him to slow down to the speed he was traveling. The tractor-trailers were building up behind him and the longer that continued, the more traffic caught up to that pack and the pack [was] growing the longer that this [went] on.

When Shell reduced his speed, "[t]he tractor-trailers that were directly behind him began to brake. . . . [I]t caused the trucks to have to decelerate to keep from hitting each other and hitting Mr. Shell's vehicle." As Shell continued past the officer, he remained in the center lane although he had an opportunity to move into the right lane. The officer testified that he believed that Shell's driving was impeding the flow of traffic on the highway and creating a traffic hazard; for that reason, he initiated a traffic stop.

After stopping the car, the officer approached Shell, asked to see his driver's license, and asked him to step out of the car. The officer saw what "appeared to be small pieces of marijuana debris on the windowsill." He also saw either two or three cellular telephones inside the car. He described Shell as "extremely nervous. He was breathing very rapidly, had a carotid pulse visible in his neck, and his hands were trembling."

Shell did not have a driver's license with him, and he was driving a rental car but did not have paperwork relating to the rental. The officer began writing a traffic citation and initiated steps to verify Shell's licensed status and authority to be driving the rental car. Because Shell appeared so nervous, before the officer completed these tasks he asked Shell to step out of the car and sought permission to perform a pat-down search. During the pat-down search, the officer

found in one of Shell's pockets a "very large wad of cash [that] looked liked it was at least $1,000."

The officer was "very suspicious" that Shell might be involved in illegal narcotics activity in light of the amount of cash in his pocket, the fact that he was driving a rental car without paperwork, his possession of two to three cellular telephones, and the presence of marijuana debris in the car. Accordingly, the officer sought consent to search the car, and Shell agreed.

During his search, the officer saw a plastic bag on the front passenger seat of the car that he initially thought was trash "because it appeared to have papers wadded up in it and it was tied off." When he picked up the bag, however, it felt "a lot heavier than trash would normally be." He squeezed the bag and felt "chunks" inside. Believing that the bag likely contained narcotics, the officer untied the top of the bag and saw inside what later was determined to be 269.34 grams of 62.9 percent pure cocaine.

1. Shell argues that the cocaine should have been suppressed because the officer had no articulable suspicion for stopping his car. But the officer's testimony authorized a finding that he saw Shell commit the traffic violation of impeding the flow of traffic. See OCGA § 40-6-184 (a) ("No person shall drive a motor vehicle at such a slow speed as to impede the normal and reasonable movement of traffic, except when reduced speed is necessary for safe operation."). "It is axiomatic that a police officer who observes a traffic violation is authorized to conduct a traffic stop of the vehicle in question." (Citations omitted.) *Young v. State*, 310 Ga. App. 270, 272 (712 SE2d 652) (2011).

Shell contends that we should reverse based upon *State v. Whelchel*, 269 Ga. App. 314 (604 SE2d 200) (2004), in which we held that an officer was not authorized to initiate a traffic stop of a defendant for impeding the flow of traffic where the undisputed facts showed that other vehicles on the road were at a safe distance from the defendant's vehicle and nothing prevented them from maneuvering into the right lane to pass the defendant. Id. at 315-316. Here, however, the officer testified that Shell's driving caused the traffic behind him to back up and created a hazard. Shell argues that the officer's testimony was not credible because it was internally inconsistent and because a video recording of the stop showed that, shortly before the stop, a tractor-trailer was able to pass Shell's car on the right. But "[i]t was for the trial court, sitting as finder of fact, to gauge the credibility of the officer's testimony that he observed [Shell] commit a traffic violation." (Citation omitted.) *Warren v. State*, 314 Ga. App. 477, 482 (3) (724 SE2d 404) (2012). We find no abuse of

discretion requiring us to reverse the trial court's judgment. See *Tate*, 264 Ga. at 54 (1); *Warren*, supra at 482 (3).

2. Citing *State v. Corley*, 201 Ga. App. 320 (411 SE2d 324) (1991) (physical precedent only), Shell argues that the cocaine should have been suppressed because his consent to a search of the car did not extend to a search of the bag in which the cocaine was found. But we need not reach the issue of the scope of Shell's consent.

> Under the automobile exception to the warrant requirement imposed by the Fourth Amendment, a police officer may search a car without warrant if he has probable cause to believe the car contains contraband, even if there is no exigency preventing the officer from getting a search warrant.

(Citations and punctuation omitted.) *State v. Sarden*, 305 Ga. App. 587, 589 (699 SE2d 880) (2010). And "[w]hen there is probable cause to search for contraband in a car, it is reasonable for police officers . . . to examine packages and containers without a showing of individualized probable cause for each one." *Wyoming v. Houghton*, 526 U. S. 295, 302 (II) (119 SC 1297, 143 LE2d 408) (1999). Accord *State v. Selph*, 261 Ga. App. 541, 542 (583 SE2d 212) (2003).

Evidence was presented that particles of what appeared to be marijuana were in plain view in the car, that Shell displayed characteristics consistent in the officer's experience with involvement in illegal narcotics transactions, and that he displayed an extremely nervous demeanor. Construing this evidence most favorably to support the trial court's judgment, "the facts and circumstances before [the officer] were such as would lead a reasonably prudent person to believe that contraband was present," thereby providing the officer with probable cause to search the car. (Citation and punctuation omitted.) *Barraco v. State*, 244 Ga. App. 849, 852-853 (2) (b) (537 SE2d 114) (2000); see *State v. Swift*, 232 Ga. 535, 536 (2) (207 SE2d 459) (1974) (presence of marijuana in plain view on floorboard of vehicle provided probable cause for warrantless search of vehicle); *Sarden*, 305 Ga. App. at 589-590 (officer's observation in vehicle of what he suspected to be cocaine would have led a reasonably prudent person to believe there was drug contraband in vehicle); *Higdon v. State*, 261 Ga. App. 729, 734 (a) (583 SE2d 556) (2003) (listing among other evidence that warranted a finding of probable cause evidence that defendant displayed specific behavior consistent with known characteristics of drug couriers and had nervous demeanor and trembling hands when approached by law enforcement officer). We find no error in the denial of the motion to suppress. See generally *Boulware v. State*, 189 Ga. App. 390, 391 (2) (376 SE2d 209) (1988) (affirming

denial of motion to suppress because probable cause supported search of car, without addressing defendants' arguments regarding validity of consent).

*Judgment affirmed. Barnes, P. J., and Adams, J., concur.*

DECIDED APRIL 12, 2012.

*Michael L. Hubbard*, for appellant.

*David McDade, District Attorney, James A. Dooley, Emily K. Richardson, Assistant District Attorneys*, for appellee.