**FOURTH DIVISION**
**ELLINGTON, P. J.,**
**BRANCH and MERCIER, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**September 16, 2016**

# In the Court of Appeals of Georgia

A16A0746. SMITH v. THE STATE.                                        JE-025C

ELLINGTON, Presiding Judge.

A DeKalb County jury found Saevon Smith guilty of one count of impeding the flow of traffic, OCGA § 40-6-184 (a); and two counts of driving under the influence of alcohol ("DUI"), one for violating OCGA § 40-6-391 (a) (1) (DUI less safe), and the other for violating OCGA § 40-6-391 (a) (5) (DUI per se). Smith appeals from the judgment of conviction, contending that the evidence was insufficient to support his conviction for impeding the flow of traffic, that the trial court erred in denying his motions to suppress and to sever offenses, and that the trial court erred in admitting certain evidence. For the reasons that follow, we affirm the judgment in part, reverse in part, vacate in part, and remand for re-sentencing.

Viewed in the light most favorable to the jury's verdict,[1] the record shows as follows. At 2:48 a.m. on March 1, 2015, an officer with the Doraville Police Department observed a truck slow down and stop for no apparent reason in front of another vehicle at a green traffic light on Peachtree Industrial Boulevard, a highway, at the intersection of I-285 in DeKalb County. The officer observed the vehicle behind Smith signal, negotiate traffic, and then maneuver around the truck in order to proceed through the intersection. The officer pulled his patrol car behind the stopped truck, activated his blue lights, and went to investigate. A video-recording tendered into evidence supported the officer's account of these events and showed the traffic conditions at the time of the stop.

The officer observed that the driver, later identified as Smith, had his eyes closed and his head tilted backward onto the headrest, as if he was falling asleep. Smith's foot was pressed against the brake pedal, but the truck was still in drive. When the officer opened the driver's side door, he smelled the strong odor of an alcoholic beverage. Smith was drowsy and slow to respond to the officer's questions, his eyes were red and watery, and his movements were sluggish. When the officer

---

[1] *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

2

asked Smith for his driver's license, Smith said that he had left it at his girlfriend's house. Smith told the officer that he had consumed two or three beers at a friend's house.

When the officer asked Smith to step out of his truck, Smith lost his balance and almost fell. The officer could smell the odor of an alcoholic beverage on Smith's breath. The officer asked Smith to perform field sobriety tests, and Smith agreed. The officer administered a horizontal gaze nystagmus test, and the officer testified that Smith exhibited six out of six clues indicating intoxication. Smith's performance on the remaining field sobriety tests (walk and turn, one leg stand) was, according to the officer, "absolutely horrible." The video-recording of these field sobriety tests, which shows Smith stumbling, swaying, and waving his arms, was admitted in evidence. Smith also took an Alco-sensor test, which indicated that Smith had consumed an alcoholic beverage. The officer testified that he arrested Smith for DUI "less safe" based on this evidence. About 30 minutes later, at the Doraville Police Department, Smith submitted to an Intoxilyzer 9000 test, which returned blood alcohol readings of .145 and .142. The State also introduced into evidence Smith's booking photo, which depicted him with his eyes half-closed.

1. Smith contends that the evidence was insufficient to support the jury's verdict on the charge of impeding the flow of traffic because other lanes of travel remained open, allowing traffic to flow around him. For the following reasons, we disagree and affirm the judgment of conviction.

OCGA § 40-6-184 (a) provides that "[n]o person shall drive a motor vehicle at such a slow speed as to impede the normal and reasonable movement of traffic, except when reduced speed is necessary for safe operation." The record shows that Smith slowed his truck and then stopped at a green light on a busy highway, forcing traffic to maneuver around him. Although traffic was not stopped completely by Smith's conduct, the evidence authorized a jury to conclude that, given the circumstances, Smith interfered with other drivers' ability to proceed normally and safely through a busy intersection, thereby impeding the normal and reasonable movement of traffic. There was no evidence adduced from which a jury could infer that Smith stopped his truck for safety reasons. Rather, the evidence supports the reasonable inference that Smith slowed to a stop because he was impaired by alcohol consumption. This evidence is sufficient to support the jury's verdict beyond a reasonable doubt. See, e.g. *Shell v. State*, 315 Ga. App. 628 (1) (727 SE2d 243) (2012) (Although the video showed that another vehicle was able to pass the

4

defendant, the officer testified that traffic backed up behind the defendant, creating a safety hazard. This evidence was sufficient to allow the jury to find that the defendant was impeding the flow of traffic in violation of OCGA § 40-6-184 (a).); *Dunn v. State*, 289 Ga. App. 585, 587-588 (3) (657 SE2d 649) (2008) (The defendant's conviction for impeding the flow of traffic was supported by evidence showing that, without reasonable cause, the defendant was driving his truck very slowly on an interstate highway with a minimum posted speed limit, and that, as a result, the traffic behind the truck was backed up.).

2. Smith argues that the trial court erred in denying his motion to suppress the evidence of his intoxication because the officer did not have the reasonable articulable suspicion necessary to support a stop of his vehicle.

"It is well settled law that[,] before stopping a car, an officer must have specific, articulable facts sufficient to give rise to a reasonable suspicion of criminal conduct." (Punctuation and footnote omitted.) *Christy v. State*, 315 Ga. App. 647, 650 (1) (727 SE2d 269) (2012). "[T]he stop of a vehicle is authorized if an officer observes the commission of a traffic offense." (Citation and punctuation omitted.) *Taylor v. State*, 230 Ga. App. 749, 750 (1) (a) (498 SE2d 113) (1998).

5

The record supports the trial court's denial of the motion to suppress.[2] The trial court was authorized to deny the motion based upon the officer's testimony and the video evidence showing that Smith slowed down and came to a stop at a green traffic light on a highway for no apparent reason, forcing traffic to maneuver around him. The officer's observations provided him with sufficient cause to initiate a traffic stop for a violation of OCGA § 40-6-184, impeding the flow of traffic. See, e.g., *Rowe v. State*, 314 Ga. App. 747, 749-750 (1) (725 SE2d 861) (2012) (Holding that, when the evidence showed that the officer had a reasonable basis for concluding that the defendant's vehicle was impeding the flow of traffic in violation of OCGA § 40-6-184, an investigatory stop was authorized.); *Taylor v. State*, 230 Ga. App. at 750 (1) (a) (accord); *Gabbidon v. State*, 184 Ga. App. 475, 475, 476 (2) (361 SE2d 861) (1987) (accord). This claim of error is without merit.

---

[2] At a hearing on motion to suppress, the trial judge sits as the trier of fact. *Miller v. State*, 288 Ga. 286, 286 (1) (702 SE2d 888) (2010). Because the trial judge hears the evidence, the judge's findings based upon conflicting evidence are "analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support [them]." Id. The trial judge's decision with regard to questions of fact and credibility "must be accepted unless clearly erroneous." Id. This Court must construe the evidence "most favorably to the upholding of the trial court's findings and judgment." Id.

3. Smith contends that the trial court erred in denying his untimely[3] motion to sever the counts of the accusation and to try the charge of impeding the movement of traffic separately from the DUI counts.

> Where two offenses have been joined because they are based on (1) the same conduct, (2) on a series of connected acts, or (3) on a series of acts constituting parts of a single plan or scheme, the trial judge has discretion to decide whether or not to sever offenses. The trial court should sever the offenses if severance is appropriate to promote a fair determination of guilt or innocence as to each offense.

(Citations and punctuation omitted.) *Jackson v. State*, 276 Ga. App. 77, 78 (1) (622 SE2d 423) (2005). Smith has not shown that the trial court abused its discretion in denying the motion to sever. The offenses arose out of the same conduct and there is no evidence in the record that severance was necessary to promote a fair determination of Smith's guilt or innocence on each count of the indictment. Consequently, this claim of error it without merit. See id.

---

[3] Smith filed his motion to sever months after arraignment; hence, it was untimely. See OCGA § 17-7-110 ("All pretrial motions … shall be filed within ten days after the date of arraignment, unless the time for filing is extended by the court."). The trial court, in this case, heard and denied the motion on the morning of trial without stating a basis for its decision. It is unclear, therefore, whether the trial court impliedly extended the time for filing the motion. Therefore, we address the merits of Smith's claim of error.

7

4. Smith contends that the trial court erred in admitting the certificates of inspection for the Intoxilyzer 9000 on the grounds that the State failed to list the name of the inspector who signed the certificates on the State's witness list and because the State failed to provide Smith with copies of the certificates during discovery.

In *Brown v. State*, 268 Ga. 76, 80 (485 SE2d 486) (1997), the Supreme Court of Georgia held that such inspection certificates merely memorialize the fact that all required calibration tests have been made and that the device passed those tests. The inspection certificates are not testimonial in nature. *Rackoff v. State*, 281 Ga. 306, 309 (2) (637 SE2d 706) (2006). Because an inspection certificate is not testimonial in nature, a defendant has no right to confront the inspector who produced it and the State need not produce the inspector as a witness at trial in order to introduce the certificates into evidence. *Phillips v. State*, 324 Ga. App. 728, 733 (751 SE2d 526) (2013). Thus, Smith has not shown that the trial court erred in admitting the certificates on the ground that the State failed to name as a witness the person who inspected the Intoxilyzer. See id.

Additionally, Smith did not object to the admission of the certificates on the ground that they were not provided in discovery. Therefore, this claim of error has not been preserved for our review. See *Chesser v. State*, 228 Ga. App. 164, 165 (1) (a)

8

(491 SE2d 213) (1997) (defendant waived on appeal all issues of admissibility to which he failed to pose a specific objection at trial).

5. Smith contends that the trial court erred in admitting the results of his Intoxilyzer 9000 breath test because the officer provided him with misleading information concerning the consequences of his refusal to submit to the test. The State concedes that the officer provided misleading information, but argues that the error does not require a new trial given the overwhelming evidence of Smith's guilt on the DUI "less safe" offense. For the following reasons, we agree.

The record shows that Smith does not have a Georgia driver's license. He was licensed to drive in South Carolina, but at the time of his arrest, his license had been suspended. Smith agreed to submit to the Intoxilyzer test, but only after he was advised by the arresting officer that, if he refused the test, "they will turn around and suspend your license for a year." The State concedes that the officer's statement was substantially misleading because the Georgia Department of Driver Services has no authority to suspend or revoke the driver's license of a non-resident motorist. Rather, the Department is only authorized to revoke or suspend the non-resident's privilege

of driving in Georgia pursuant to OCGA § 40-5-51 (a).[4] See *State v. Barnard*, 321 Ga. App. 20, 23-24 (1) (740 SE2d 837) (2013) (The Department "has no authority to suspend or revoke the driver's license of a nonresident motorist.") (footnote omitted). Because this misleading information may have affected Smith's decision to consent to the Intoxilyzer test, the court's decision to admit the test results in evidence was error. See id. The State concedes that the error is harmful with respect to a conviction for DUI "per se"[5]; however, it argues that, with respect to the DUI "less safe" conviction, the error was harmless.

In this case, the jury found Smith guilty of both DUI "less safe" and DUI "per se." The trial court imposed a 24-month sentence (10 days in jail, the balance probated), apparently accepting the prosecutor's recommendation to sentence Smith to 12-months for each DUI conviction and running the sentences concurrently. The court's order, however, does not parse out how the sentences were imposed and it

---

[4] OCGA § 40-5-51 (a) provides, in pertinent part: "(a) The privilege of driving a motor vehicle on the highways of this state given to a nonresident under this chapter shall be subject to suspension or revocation by the department only when suspension or revocation is required by law for the violation."

[5] See *Richards v. State*, 269 Ga. 483, 485 (500 SE2d 581) (1998) ("[I]t generally has been held that the erroneous admission of evidence of a defendant's blood alcohol level in a case involving a conviction for driving with a prohibited alcohol level is harmful error.") (footnote omitted).

10

does not indicate that DUI offenses merged. It is also unclear whether the court's 24-month sentence includes Smith's conviction for impeding the flow of traffic, or if the court merely imposed a fine. In any event,

> OCGA § 40-6-391 (a) establishes a single crime of driving in a prohibited condition and subsections (1) through (5) merely define different ways of committing that one crime. [Smith] was prosecuted for violating OCGA § 40-6-391 (a) (1) and (a) (5) and was found guilty of both violations, but could only be convicted and sentenced for one DUI violation.

(Footnotes omitted.) *Partridge v. State*, 266 Ga. App. 305, 306 (596 SE2d 778) (2004). Given that Smith may only be convicted of one count of DUI, the State argues that this Court should reverse the conviction for DUI "per se" but affirm the conviction for DUI "less safe" because the admission of the Intoxilyzer test results was harmless error with respect to the less safe conviction.

"The test for harmful error is whether it is 'highly probable' that the error contributed to the judgment." (Citations and punctuation omitted.) *Kitchens v. State*, 258 Ga. App. 411, 415 (1) (574 SE2d 451) (2002). In this case, the record shows that the State adduced a large amount of compelling evidence from which the jury could find that Smith was a less safe driver due to alcohol intoxication. As detailed above,

11

Smith slowed his vehicle to a stop at a green traffic light on a busy highway near a major expressway interchange, forcing traffic to move around him. The officer found Smith nearly asleep at the wheel, his foot resting on the brake while the truck was in drive. Video and photographic evidence submitted by the State supported the officer's testimony. Smith told the officer that he had consumed a few beers, and the Alco-sensor test confirmed that he had, in fact, consumed an alcoholic beverage. The officer testified that Smith smelled strongly of an alcoholic beverage, that his eyes were red and watery, that his movements were sluggish, that he almost fell out of his truck, and he failed all of his field sobriety tests horribly. Under these circumstances, it is unlikely that the improperly admitted Intoxilyzer evidence contributed to the judgment because the properly admitted evidence of Smith's guilt of DUI "less safe" was overwhelming. Therefore, the admission of the test results in this case was harmless error with respect to Smith's conviction for DUI less safe. See *King v. State*, 272 Ga. App. 8, 9-10 (2) (611 SE2d 692) (2005) ("The blood alcohol test result was merely cumulative of other evidence of [the defendant's] less-safe-to-drive condition, and error, if any, was harmless."); *Parker v. State*, 259 Ga. App. 236 (576 SE2d 610) (2003); *Camp v. State*, 259 Ga. App. 228, 230 (2) (576 SE2d 610) (2003); *Walsh v. State*, 220 Ga. App. 514 (2) (469 SE2d 526) (1996).

Consequently, we reverse Smith's conviction for DUI "per se." We vacate the sentencing order and remand the case to the trial court for re-sentencing on Smith's remaining convictions, impeding the flow of traffic, OCGA § 40-6-184 (a), and DUI "less safe," OCGA § 40-6-391 (a) (1).

*Judgment affirmed in part, reversed in part, and vacated in part, and case remanded for re-sentencing. Branch and Mercier, JJ., concur.*