**FIFTH DIVISION
MCFADDEN, P. J.,
MCMILLIAN and GOSS, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**June 25, 2019**

# In the Court of Appeals of Georgia

A19A0553. HILL v. THE STATE.

A19A0578. BULLOCK v. THE STATE.

McMILLIAN, Judge.

Defendants Jonathan S. Hill and Rico Bullock were jointly tried before a jury and convicted of trafficking in methamphetamine and possession of a firearm during the commission of a felony. They filed motions for new trial, as amended, which the trial court denied following a hearing. Hill and Bullock then filed separate appeals, which we have consolidated for review. As more fully set forth below, we now affirm in both appeals.

Construed to support the jury's verdict,[1] the evidence shows that on May 14, 2015, a Henry County police officer (hereinafter "arresting officer") visually

---

[1] *Jackson v. Virginia*, 443 U.S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

observed a car traveling south on Interstate 75 in Henry County at speeds in excess of 80 mph, which he then confirmed with two laser radar readings.[2] The arresting officer initiated a traffic stop, and the driver of the vehicle immediately pulled over. The officer approached the passenger side of the vehicle, as was his custom during an interstate stop because of safety and security concerns. The arresting officer immediately detected a strong odor of burnt marijuana and a fainter odor of raw marijuana, both of which the officer said he had been trained to recognize. The driver, subsequently identified as defendant Bullock, produced a valid license but not an insurance card because the car was a rental. By this point, the officer had already observed signs of extreme nervousness on the part of the driver, which included shaking hands and a heartbeat that was visible through Bullock's t-shirt. The officer also said that he observed that the passenger, subsequently identified as Hill, was pressed back into his seat and did not make eye contact or speak with him, which the arresting officer said in his experience was unusual because the passenger is usually more talkative than the driver since they are not worried about getting a ticket.

---

[2] The arresting officer testified the recording equipment in his car was not working, and none of the events of the stop were recorded.

Because of the "nervousness and the smell of marijuana" the officer decided he had probable cause to search but first called for backup. The backup officer arrived within minutes, and the arresting officer advised Bullock that based on the marijuana smell, he intended to conduct a probable cause search of the vehicle. Bullock told the arresting officer that his wife, Hill, and he occasionally smoked marijuana and it was probably coming from his clothes.

The arresting officer proceeded to search the vehicle, starting with the front center console between the passenger and driver's seats, where he discovered a loaded Smith and Wesson Model 39 semiautomatic pistol.[3] He next looked in the backseat, where he observed what appeared to be, based on his training and experience, "little bits of loose marijuana primarily in the rear passenger floorboard." The arresting officer next looked into the trunk, where he observed a blue paper shopping or gift bag sitting directly in the center of the trunk with a pair of men's gray Nike tennis shoes sitting on top. Two food-storage type containers, each wrapped in plastic wrap, were in the bag underneath the shoes. The substance in the containers field tested positive for methamphetamine, and subsequent lab testing

---

[3] Neither Bullock nor Hill claimed ownership of the gun, although one of them remarked it cost $250.

confirmed the substance was methamphetamine weighing approximately 996.97 grams.

Defendants were placed under arrest and searched. Police discovered $1000 in Hill's left front pants pockets, and $91 was removed from his right front pants pocket; Hill told police that the $1000 was his payment for picking up the narcotics and transporting them back to Macon, Georgia. Hill and Bullock were interviewed by a Narcotics Investigator once they arrived at the jail, and following a *Jackson-Denno* hearing*,* the Investigator testified about defendants' inculpatory statements at trial. The Investigator said he first interviewed Bullock, who immediately made the statement that "he was dead" because he did not follow instructions to wait until the morning to travel back to Macon when the traffic would be heavier and the risk of getting stopped therefore diminished. He further testified that Bullock told him that he had gone to an apartment complex in Norcross, Georgia, where he was supposed to pick up something and take it back to Macon where he lived.

The Narcotics Investigator also interviewed Hill, who told him that he had received a telephone call that the drugs had been delayed and that he was going to have to go to Norcross to pick them up, although normally they were delivered to Macon. Hill also said that they were advised to leave in the morning rush hour traffic,

4

but that they left that night because they were tired and ready to get home, which Bullock had also said was the reason they did not wait. The Investigator testified that Hill told him that when he arrived in Norcross he went inside the apartment and exchanged the money while the methamphetamine was being weighed. Hill also told him that normally he only "moved around" in the Macon area, where his job was to collect the money for previous methamphetamine he had dropped off.

The Narcotics Investigator further testified that as Hill was about to be transported to jail, he told the Investigator that the GPS to the apartment was still on his phone and that he could look at it and gave him the pass code. The Narcotics Investigator said that he used the pass code Hill gave him to gain access to the phone, and he found a Norcross address in the phone that matched the address Hill provided as being the location where he picked up the methamphetamine. Based on this and other evidence presented at trial, defendants were convicted of trafficking in methamphetamine and possession of a firearm during the commission of a felony, and given identical sentences of 30 years, to serve 25 with the remainder on probation.

1. Hill first argues that the trial court erred in denying his motion to suppress, challenging the credibility of the officer who initiated the stop and contending that the officer unreasonably prolonged the stop.

> Under the automobile exception to the warrant requirement imposed by the Fourth Amendment, a police officer may search a car without a warrant if he has probable cause to believe the car contains contraband, even if there is no exigency preventing the officer from getting a search warrant." (Citation and punctuation omitted.) *Shell v. State*, 315 Ga. App. 628, 631 (2) (727 SE2d 243) (2012). Applying this exception, our Supreme Court and this Court have held that where a trained police officer detects the odor of burning or burnt marijuana coming from a vehicle, the officer has probable cause to conduct a warrantless search of the vehicle, provided that the officer's ability to identify the odor is placed into evidence. See *Douglas v. State*, 303 Ga. 178 (2) (811 SE2d 337) (2018); *Jones v. State*, 319 Ga. App. 678, 679 (1) (738 SE2d 130) (2013); *Williams v. State*, 273 Ga. App. 637, 639 (1) (615 SE2d 789) (2005); *State v. Folk*, 238 Ga. App. 206, 209 (521 SE2d 194) (1999) (whole court). Such a search can encompass "every part of the vehicle which might have concealed the drug contraband, including the trunk and closed containers." (Citation and punctuation omitted.) *Jones*, 319 Ga. App. at 679 (1).

*State v. Alford*, 347 Ga. App. 208, 214 (3) (818 SE2d 668) (2018).

In reviewing a ruling on a motion to suppress, we review the trial court's factual findings for clear error and its legal conclusions de novo. See *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474) (1994). In addition, in reviewing such a ruling, an appellate court must construe the evidentiary record in the light most favorable to the trial court's factual findings and judgment. An appellate court also generally must limit its consideration of the disputed facts to those expressly found by the trial court. *Caffee v. State*, 303 Ga. 557, 557 (814 SE2d 386) (2018) (citations and punctuation omitted.)

*Kennebrew v. State*, 304 Ga. 406, 409 (819 SE2d 37) (2018).

The arresting officer who initiated the stop and the officer who was called as backup both testified at the motion to suppress hearing and at trial.[4] Based on the officers' "uncontradicted testimony," the trial court made an oral finding, which it incorporated into the final order on the motion, that the initial stop was lawful because Hill was speeding and that probable cause to conduct a warrantless search of the vehicle was established by the officer's testimony that he detected the odor of

---

[4] In reviewing the trial court's ruling on a motion to suppress, we may consider both the evidence presented at the motion to suppress hearing and the evidence presented at trial. *Brown v. State*, 295 Ga. 695, 697 (2) (763 SE2d 710) (2014) ("Upon review, we consider both the transcript of the hearing on Appellant's motion[] to suppress as well as the trial transcript."). Further, we note that neither a video nor audio recording of the stop was available to establish what transpired during the stop, a fact which the trial court noted in making its ruling.

burnt marijuana coming from the vehicle upon approaching the vehicle and conversing with the occupants. Because the officer smelled the marijuana upon approaching the vehicle and immediately called for backup so he could safely search the vehicle based on his detection of the odor of marijuana, there was no unconstitutional prolongation of the traffic stop in this case. Accordingly, this enumeration is without merit. *Douglas v. State*, 303 Ga. 178, 181-82 (2) (811 SE2d 337) (2018) (odor of marijuana emanating from the vehicle provided probable cause to search); *Jones v. State*, 319 Ga. App. 678, 678-79 (1) (738 SE2d 130) (2013) (smell of burnt and raw marijuana by trained officer established probable cause to search, including the trunk of the vehicle where the cocaine was found); *Williams v. State*, 273 Ga. App. 637, 638 (1) (615 SE2d 789) (2005) (odor of burnt and burning marijuana sufficient to establish probable cause to search the vehicle).

2. Hill next argues that the trial court erred by admitting his in-custody statement, arguing that he was not properly advised of his *Miranda* warnings and that the trial court failed to carefully review the waiver of *Miranda* warnings.

The record shows that the Narcotics Investigator testified both at the *Jackson-Denno* hearing and at trial that he advised Hill of his rights in full, and the Investigator's response of "I believe so" in response to questioning at trial as to

8

whether he included all parts of the warning was, taken in context, not an equivocation but an affirmation of his belief that he did so. And Hill's trial counsel testified at the hearing on the motion for new trial that Hill told him he was given his *Miranda* rights in full. Further, there is nothing in the record to suggest the trial court did not take into account the proper considerations in deeming the defendants' statements admissible and in fact, sua sponte, took steps to ensure that limitations were placed on the Investigator's trial testimony to avoid a Confrontation Clause issue. Accordingly, Hill was not entitled to a new trial on this basis.

3. Hill also enumerates several instances of alleged ineffective assistance of trial counsel. In order to establish ineffective assistance, Hill was required to show both that counsel's performance was deficient and that he was prejudiced by that performance. See *Strickland v. Washington*, 466 U.S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984).

> To prove the performance of his lawyer was deficient, [Hill] must show that the lawyer performed his duties at trial in an objectively unreasonable way, considering all the circumstances, and in the light of the prevailing professional norms. And to prove that he was prejudiced by the performance of his lawyer, [Hill] must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."

(Citations omitted.) *Williams v. State*, 304 Ga. 455, 457 (2) (818 SE2d 653) (2018), quoting *Strickland* 466 U.S. at 694 (III) (A).

(a) Hill first argues that his trial counsel was ineffective for not eliciting testimony from him that he was never given his Miranda warnings and never made the statements to the Narcotics Investigator that were attributed to him. But his trial counsel testified at the motion for new trial hearing that Hill and he discussed whether Hill would testify at the hearings and that Hill was unequivocal that he did not want to testify or talk at the hearings. Further, trial counsel also testified that Hill specifically told him that he had been given his Miranda rights in full. Although Hill testified at the hearing that his trial counsel never told him that he could testify at the motion to suppress and *Jackson-Denno* hearings without that testimony being used against him at trial and denied that he spoke to the Narcotics Investigator, the trial

court was not required to accept this testimony.[5] This allegation of ineffectiveness is thus without merit.

(b) Hill next contends that his trial counsel should have filed a motion to sever his trial from that of his co-defendant Bullock. At the motion for new trial hearing, Hill's trial counsel testified that he did not move to sever Hill's trial from his co-defendant's because he thought such a motion would have been "frivolous."

Under OCGA § 17-8-4(a), "[w]hen two or more defendants are jointly indicted . . . for a felony less than capital, . . . such defendants may be tried jointly or separately in the discretion of the trial court." "Since the grant or denial of a motion to sever is left in the discretion of the trial court, its ruling will only be reversed for an abuse of discretion." *Baker v. State*, 238 Ga. 389, 891 (2) (233 SE2d 347) (1977). Thus, in order to establish ineffective assistance due to the failure to file such a motion, the accused must show that the failure to grant the motion would have amounted to an abuse of discretion. And in order to show an abuse of discretion, a defendant would have to show clearly that he would be prejudiced by a joint trial.

---

[5] Although the trial court did not make a specific credibility determination, in denying the motion for new trial, the trial court noted that there was no evidence under either the deficiency or prejudice prong to support a finding of ineffective assistance.

11

Hill argues that he was prejudiced by a joint trial by pointing to inculpatory in-custody statements Bullock made to law enforcement personnel and argues that he could have cross-examined these "statements" if he had been tried separately. However, the statements Hill points to, as demonstrated by his record citations included in his brief to support his argument, are taken from testimony given at the pre-trial *Jackson-Denno* hearing, not from the testimony actually presented to the jury at trial because the trial court took steps to ensure that testimony about these particular statements was not presented to the jury. Further, Hill's argument that had the trials been severed he would have been able to "confront and cross-examine the co-defendant['[]s statements" is specious since the statements he points to were made during a hearing outside the presence of the jury and nothing prevented him from cross-examining the Narcotics Investigator about the statements since the jury would not have heard that testimony.

"What is more, [Hill] fails to demonstrate antagonistic defenses, that evidence admissible only against [Bullock] was improperly used against [Hill], or that the joint trial created any confusion." *Dulcio v. State*, 292 Ga. 645, 654 (3) (h) (740 SE2d 574) (2013). Accordingly, Hill has not shown that his motion to sever should or would have been granted and he cannot establish either a deficiency of his lawyer or

12

prejudice in the failure to request a severance. See *Wallace v. State*, 296 Ga. 388, 391 (4) (a) (768 SE2d 480) (2015); *Jackson v. State*, 316 Ga. App. 80, 84 (3) (729 SE2d 404) (2012).

(c) Hill next argues that his trial counsel was ineffective because he failed to recognize and object to evidence of other criminal acts, resulting in a failure to analyze that evidence for admissibility under OCGA §§ 24-4-403 and 24-4-404. Although counsel testified there was no strategic reason why he failed to object to the evidence, because the evidence was properly admitted as evidence intrinsic to the charged offense, Hill cannot establish that his counsel performed deficiently.

The record shows that Hill made statements to the Narcotics Investigator concerning why he was transporting the drugs that day, including statements to the effect that he just collected the money for the drugs and usually was not involved in the transporting side of the criminal enterprise. As our Supreme Court has explained, "[t]he limitation and prohibition on 'other acts' evidence set out in OCGA § 24-4-404 (b) do not apply to 'intrinsic evidence.'" (Citation omitted.) *Williams v. State*, 302 Ga. 474, 485 (IV) (d) (807 SE2d 350) (2017). Evidence is considered intrinsic "when it is (1) an uncharged offense arising from the same transaction or series of transactions as the charged offense; (2) necessary to complete the story of the crime; or (3)

13

inextricably intertwined with the evidence regarding the charged offense." (Citation and punctuation omitted.) *Smith v. State*, 302 Ga. 717, 725 (4) (808 SE2d 661) (2017). Further,

> [e]vidence pertaining to the chain of events explaining the context, motive, and set-up of the crime, is properly admitted if it is linked in time and circumstances with the charged crime, or forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury. (Citation and punctuation omitted.)

Id.

The statements here explained why Hill was transporting drugs and what led him to be passing through Henry County with a trunk full of methamphetamine and were no doubt intended to convince the police that Hill did not normally transport drugs and to minimize his involvement in the drug trade. Thus, because the statements were admissible as intrinsic evidence, trial counsel's failure to object was not deficient, and this enumeration provides no basis for reversal based on ineffective assistance of counsel. *Smith*, 302 Ga. at 725 (4) (defendant's statements about his consumption of drugs to explain his condition on the night of the murder, excuse his partial lack of recollection and to deny his involvement were "inextricably intertwined with the evidence regarding the charged offenses, as such portions formed

14

an integral and natural part of his account of the circumstances surrounding the offenses.")

(d) Hill also argues that his trial counsel was ineffective for not objecting to hearsay, specifically the testimony of the arresting officer concerning statements made to him by the Narcotics Investigator who recounted what Hill told him about the evidence on his phone pertaining to the drug transaction. Hill acknowledges that the statements he made to the Narcotics Investigator would be admissible as an admission by a party opponent under OCGA § 24-4-801 (d), but argues that the statements the Narcotics Investigator made to the other officer about Hill's statements were not admissible under that exception. However, pretermitting the soundness of this hearsay argument, we find no basis for reversal. Hill concedes that the testimony of the Narcotics Investigator concerning the statements Hill made to him about the information on the phone would be admissible as an admission by a party opponent under OCGA § 24-4-801 (d), and the Narcotics Investigator did, in fact, also testify about Hill's statements concerning the information on his phone. Accordingly, this evidence was merely cumulative of properly admitted evidence and even assuming an objection to the testimony of the arresting officer was proper, the prejudice prong has not been met.

4. Hill next contends that the trial court erred by denying his motion for mistrial after the Narcotics Investigator used plural pronouns during his testimony about Hill and Bullock's statements, in violation of the trial court's earlier ruling during the *Jackson-Denno* hearing. The record shows that prior to allowing the Narcotics Investigator to testify about defendants' statements, the trial court had taken measures to avoid a potential Confrontation Clause issue by ensuring that the Narcotics Investigator used singular not plural pronouns when referring to the defendants' incriminating statements. The prosecuting attorney had instructed the witness in writing on using singular prounouns, and the trial court clearly admonished the witness to limit his testimony to avoid *Bruton* problems. However, at trial, the Narcotics Investigator used the plural pronoun "they" at several points during his testimony, prompting a motion for mistrial from defense counsel, which the trial court denied although it agreed the testimony violated the previous ruling and gave curative instructions.

In *Bruton v. United States,* 391 U.S. 123 (88 SCt 1620, 20 LE2d 476) (1968), the United States Supreme Court held that the admission of the testimonial statement of a nontestifying co-defendant in which the co-defendant implicates the other co-defendant violates the defendant's constitutional right to confrontation even when a

16

limiting instruction is given to the jury. Id at 136-37. See also *Hanifa v. State*, 269 Ga. 797, 803 (2) (505 SE2d 731) (1998). However, even assuming the Narcotics Investigator's use of plural pronouns resulted in a *Bruton* violation, reversal is not necessarily required because "[a] *Bruton* violation may not be prejudicial when the complained-of statements are substantially similar to evidence properly admitted at trial." *Battle v. State*, 301 Ga. 694, 700 (4) (804 SE2d 46) (2017).

> [I]n some cases the properly admitted evidence of guilt is so overwhelming, and the prejudicial effect of the co[-]defendant's admission is so insignificant by comparison, that it is clear beyond a reasonable doubt that the improper use of the admission was harmless error. Whether a violation of the Confrontation Clause is harmless depends on a host of factors, including the importance of the witness'[s] testimony in the prosecution's case, whether the testimony was cumulative, and the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.

(Citations and punctuation omitted.) *Collum v. State*, 281 Ga. 719, 721-22 (2) (642 SE2d 640) (2007). See *Schneble v. Florida* 405 U.S. 427, 430 (92 SCt 1056, 31 LE2d 340) (1972).

17

With regards to Hill, the record shows that the alleged violations he points to were either testimony about consistent statements made by both defendants to the Investigator, such as they had been instructed to travel in the morning but came back that night because they were tired, or were admissible statements that Hill made about his own activities, such as his statements about collecting money for but not transporting drugs. Further, based on Hill's own statements as well as other evidence, the evidence of his guilt was overwhelming, and the prejudicial effect of the use of the word "they" was insignificant by comparison. Cf. *Hall v. State*, 161 Ga. App. 521, 522-23 (1) (289 SE2d 313) (1982) (*Bruton* violation does not automatically require reversal if properly admitted evidence of guilty is so overwhelming "and the prejudicial effect of the co-defendant's admission is so insignificant by comparison.") (citation and punctuation omitted.) Accordingly, this enumeration provides no basis for reversal.

5. Lastly, Hill asserts that the "weight" of the evidence was insufficient to support his conviction, pointing to, among other things, the lack of independent and corroborating evidence (such as a video of the stop) and credibility issues. However, as Hill acknowledges, this Court has no authority to weigh the evidence or second guess credibility determinations. Further, the trial court did undertake to weigh the

18

evidence as is permitted by OCGA §§ 5-5-20 and 5-5-21, and did not find a new trial warranted on this basis. Because the evidence to support Hill's conviction was sufficient under the standard of *Jackson v. Virginia*, 443 U.S. 307 (99 SCt 2781, 61 LE2d 560) (1979), this contention presents no basis for reversal.

*CASE NO. A19A0578.*

6. Turning to Bullock's appeal, he also challenges the denial of the trial court's motion to suppress, but asserts a different argument – that the State failed to establish the officer's qualifications and experience to recognize the odor of burnt or raw marijuana. Although it is true that the officer who conducted the stop did not testify about his qualifications at the hearing on the motion to suppress, he filled in that gap when he testified at trial. As noted above in footnote 4, both the evidence presented at trial and evidence presented at a suppression hearing may be considered in evaluating the denial of the motion to suppress. *Brown v. State*, 295 Ga. 695, 697 (2) (763 SE2d 710) (2014) ("Upon review, we consider both the transcript of the hearing on Appellant's motion[] to suppress as well as the trial transcript."); see also *White v. State*, 263 Ga. 94, 98 (5) (428 SE2d 789) (1993). Accordingly, this enumeration is without merit.

7. Bullock also contends that the trial court erred by denying the motion for mistrial after the Narcotics Investigator used plural pronouns during his testimony about the defendants' statements, arguing that *Bruton* was violated and that unlike Hill, the evidence against him was much weaker. However, once again, the majority of the instances where the Investigator used plural pronouns were in fact references to statements that were made by both defendants. And while Bullock sought to maintain that he was simply the driver and did not know what they were transporting, it is clear from his own statements, such as his immediate exclamation that he was dead because he did not follow instructions and the purpose of traveling in the morning was to avoid a traffic stop, coupled with his extreme nervousness, that he knew they were transporting contraband and the Narcotics Investigator's passing reference to "they" did not, for the reasons stated in Division 4, result in reversible error.

8. Lastly, Bullock contends that his trial counsel was ineffective because he did not file a motion to sever. Bullock's trial counsel testified at the motion for new trial hearing that he did not think such a motion would be meritorious. Bullock contends on appeal, however, that in light of the strong possibility of a *Bruton* violation, which he says did in fact occur, such a strategy was not reasonable. However, we do not

20

view a claim of ineffective assistance of counsel with 20/20 hindsight but in light of what was objectively reasonable based on what counsel knew at the time. See *Sturgis v. State*, 282 Ga. 88, 90 (2) (646 SE2d 233) (2007) ("[H]indsight, whether by a court, the defendant, or defendant's counsel, is a legally insufficient basis for concluding that counsel's performance at trial was deficient[,]" and the challenged conduct must be evaluated from counsel's perspective at the time."); *Wright v. State*, 285 Ga. 428 (677 SE2d 82) (2009) (same). At the time of trial in this case, trial counsel believed that the trial court had obviated any *Bruton* violation concerns, and trial counsel was entitled to rely on the steps the trial court had taken in formulating his opinion about filing a motion to sever. Thus, judged under those circumstances, we do not believe that Bullock's counsel performed deficiently by failing to file a motion to sever, and Bullock is not entitled to a new trial on this basis.

*Judgments affirmed. McFadden, P. J., and Goss, J., concur.*