**THIRD DIVISION
DOYLE, P. J.,
GOBEIL, J., and SENIOR JUDGE FULLER**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**March 4, 2024**

# In the Court of Appeals of Georgia

A23A1619. COVERSTONE v. THE STATE.

DOYLE, Presiding Judge.

Nickolas Coverstone appeals the denial of his motion to suppress the evidence discovered during the warrantless search of his vehicle during a traffic stop, arguing that the officer did not have probable cause to conduct the search.[1] Coverstone argues that the officer failed to take into account the totality of circumstances, namely that Coverstone's possession of a legal cannibidiol "CBD" cigarette should have been considered by the officer when determining whether probable cause existed for a search of his vehicle based on the odor of suspected marijuana. For the reasons that follow, we affirm the denial of the motion to suppress.

---

[1] After the trial court granted Coverstone a certificate of immediate review, this Court granted Coverstone's application for interlocutory appeal.

[W]hen a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support [them]. . . . [T]he trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. [Finally,] the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment.[2]

Viewed in this light, the record shows that one evening in December 2019, a patrol officer observed a vehicle that "was stopped at a red light with all — I guess, the whole front portion of his car was in the intersection with only his two rear tires were stopped on the balkline."[3] The officer also noticed that the out-of-state tag had expired approximately two months earlier.

---

[2] (Punctuation omitted.) *Miller v. State*, 288 Ga. 286 (1) (702 SE2d 888) (2010), quoting *Tate v. State*, 264 Ga. 53, 54 (1) (440 SE2d 646) (1994).

[3] From the dashcam video of the incident, it is difficult to see exactly where the front of Coverstone's vehicle is located. We agree with Coverstone that it does not appear that he breached the pedestrian crosswalk. We note, however, that Coverstone changed lanes after the light turned green, and at that time, his passenger-side tires touched or went over the solid white right-hand lane line.

Based on those observations, the officer effectuated a traffic stop and approached the driver, Coverstone. The officer described Coverstone as having red, bloodshot eyes, his speech as being slow (slow, low, and deliberate), and having slow reactions, evidenced by his failure to stop at the balkline. The officer, who had been working in law enforcement for about four years, also noticed the odor of marijuana when she approached Coverstone's vehicle. The officer discussed his expired tag with him, and then she asked where he had been immediately prior to the stop because she was worried about his ability to drive; Coverstone initially responded that he was leaving work and then stated he was leaving a local bookstore. Upon further inquiry from the officer, Coverstone admitted that he had been at a bar but denied drinking anything. The officer commented on Coverstone's eyes, asked if they were naturally bloodshot, and asked if he had been smoking marijuana, which he also denied, explaining instead that he had been crying.

The officer asked Coverstone to step out of the vehicle and performed a horizontal gaze nystagmus ("HGN") field test on him, determining that Coverstone was not impaired by alcohol at that time. The officer noted that "[w]hen [Coverstone] stepped out of the car he didn't stand up he, he leaned immediately back on the car.

He continued to lean back on the car to the point that I asked him to please stand up and step off the car so I could do my evaluations," although she later conceded that he stood without a problem after being asked to do so. Despite the negative HGN field test for alcohol impairment, the officer believed that Coverstone was impaired by smoking marijuana because of "the totality of the stop" — "the smell of marijuana coming from the car, his mannerisms, his bloodshot eyes, [and] his [dilated] pupils[.]" The officer admitted that Coverstone claimed to have been crying, but she did not believe his crying resulted in the "mannerisms" that made her believe he was impaired from marijuana. A second officer called to the scene confirmed that he smelled a faint odor of marijuana when he approached Coverstone in the vehicle.

After making inquiries of dispatch, the first officer approached Coverstone, who had since re-entered his vehicle, and she asked him to step out again. She explained that she did not believe that he was impaired by alcohol, but she believed that she smelled marijuana, as confirmed by the second officer, and she believed he was impaired by the drug. The officer again asked Coverstone if he had been smoking marijuana, and he admitted that he had smoked some four hours earlier; Coverstone also stated that he regularly smoked CBD, he had a CBD cigarette at the bar, and there

was a CBD cigarette in his vehicle. The officer explained that she was going to search Coverstone's vehicle because she had probable cause to believe there was contraband based on her observations of his driving and behavior during the stop. The search revealed several marijuana smoking devices, two packages of raw marijuana, a CBD cigarette, a knife, and psilocyn mushrooms. Based on the results of the search, the officer placed Coverstone under arrest, and he was ultimately charged with possession of psilocyn.

Coverstone moved to suppress evidence from the search on the basis that the officer lacked probable cause to conduct the search. After reviewing the videos of the stop and hearing the testimony during the motion to suppress hearing, the trial court denied Coverstone's amended motion. The court also issued a certificate of immediate review, and this Court granted Coverstone's application for interlocutory appeal.

Coverstone now argues that the trial court erred by denying his motion to suppress the evidence of the search because the officer lacked probable cause to conduct a warrantless search of his vehicle because she failed to consider the totality of the circumstances given the legal CBD cigarette he possessed.

5

Under the automobile exception to the warrant requirement imposed by the Fourth Amendment, a police officer may search a car without warrant if [s]he has probable cause to believe the car contains contraband, even if there is no exigency preventing the officer from getting a search warrant. Applying this exception, our Supreme Court and this Court have held that where a trained police officer detects the odor [of raw][4] or burnt marijuana coming from a vehicle, the officer has probable cause to conduct a warrantless search of the vehicle, provided that the officer's ability to identify the odor is placed into evidence. Such a search can encompass every part of the vehicle which might have concealed the drug contraband, including the trunk and closed containers.[5]

Pursuant to "the Georgia Hemp Farming Act, OCGA § 2-23-1 et seq. ("GHFA" or "the Act"), which went into effect on May 10, 2019[,] the licensed cultivation of hemp with a specifically defined level of THC, the manufacture of products from that hemp, and the possession of those products [was legalized]."[6]

---

[4] See, e.g., *Jones v. State*, 319 Ga. App. 678, 678-679 (1) (738 SE2d 130) (2013).

[5] (Citations and punctuation omitted.) *Hill v. State*, 351 Ga. App. 58, 61 (1) (830 SE2d 478) (2019), quoting *State v. Alford*, 347 Ga. App. 208, 214 (3) (818 SE2d 668) (2018).

[6] (Citation and punctuation omitted.) *Gowen v. State*, 360 Ga. App. 234, 236 (860 SE2d 828) (2021). See also OCGA § 16-13-21 (16) (providing that it is legal to possess hemp and hemp products as defined in OCGA § 2-23-3) and OCGA § 2-23-3

Coverstone argues that this change in law requires this Court to revisit whether the odor of marijuana can support a probable cause finding. In addition to this change of law, Coverstone relies on *Gowen v. State*,[7] in which case the defendant argued that an officer lacked probable cause to search his vehicle based on the odor of burnt or raw marijuana because his legal hemp (here, Coverstone's CBD cigarette) smelled indistinguishable from illegal marijuana, and the GHFA requires a holding that a marijuana odor cannot give rise to probable cause as it once did under our state jurisprudence.[8] This Court determined in *Gowen*, however, that the defendant in *Gowen* had produced no evidence showing that the processed hemp he possessed was designed to be burned or smoked.[9] Under those circumstances, this Court determined that the smell of burnt marijuana gave rise to probable cause to search *Gowen's* vehicle.[10]

---

(3) & (6) (defining "hemp products" as products available for commercial sale that are made from hemp and contain no more than 0.3% THC).

[7] 360 Ga. App. at 236.

[8] See id. at 237 (1).

[9] See id. at 237-238 (1).

[10] See id. at 238 (1).

Here, the officer did not testify whether she smelled raw or burnt marijuana, and unlike *Gowen*, Coverstone has presented evidence that the CBD cigarette he possessed was designed to be burned or smoked. Nevertheless, the officer's probable cause determination was based on a totality of several observations and not solely based on the officer's perception of an odor of marijuana without accounting for the smell of the CBD cigarette. Therefore, this case does not require us to to revisit our prior legal precedent as urged by Coverstone.

First, the dashcam video evidenced that Coverstone failed to completely stop before the stop line at the red light, and he overcorrected to the right hand side of the lane when switching from the left to the right lane.[11] Even if those observations did not amount to egregious or chargeable traffic violations, they served as a basis to support the officer's reasonable articulable suspicion (in addition to the expired out-of-state

---

[11] See OCGA §§ 40-6-21 (a) (3) (A); 40-6-48. "[W]e may consider facts that definitively can be ascertained exclusively by reference to evidence that is uncontradicted and presents no questions of credibility such as facts indisputably discernible from a videotape." *State v. Burton*, 314 Ga. 637, 642 (2) (878 SE2d 515) (2022) (citation and punctuation omitted) (explaining standard of review in context of motion to suppress), disapproved on other grounds by *Clark v. State*, 315 Ga. 423, 434-435 (3) (b) & n.16 (883 SE2d 317) (2023).

tag) to stop Coverstone and investigate him for impaired driving.[12] Moreover, after she spoke with Coverstone about his expired tag, the officer noted that his eyes were bloodshot and red and his mannerisms were slow. While Coverstone argues that this was his normal state of acting and that he gave a reasonable excuse of having cried earlier for the state of his eyes, it was not unreasonable for the officer to discredit those explanations, and it was for the trial court to assess the credibility of the officer and her account of her interaction with Coverstone.[13] Additionally, when questioned about where he had been and whether he had been drinking, Coverstone gave conflicting answers, first saying one location and later admitting to being at a bar but not going in or drinking. After ruling out possible alcohol impairment, the officer continued to investigate Coverstone for other impairment, and he admitted to having smoked

---

[12] See, e.g., *Lute v. State*, 368 Ga. App. 70, 72-73 (1) (889 SE2d 195) (2023) (collecting cases in which weaving within a lane supports investigation for driving under the influence of a substance); *State v. Johnson*, 364 Ga. App. 50, 51 (2) (873 SE2d 709) (2022) ("Because the officer in this case observed [the defendant] fail to stop at the marked stop lines of two red traffic lights, the officer was clearly authorized to stop the vehicle and investigate these apparent violations of the traffic laws requiring drivers to obey traffic signal instructions. ") (punctuation omitted); *Rayo-Leon v. State*, 281 Ga. App. 74, 75 (1) (635 SE2d 368) (2006) (vehicle drifting over traffic line can support a stop and investigation for impaired driving).

[13] See, e.g., *Miller*, 288 Ga. at 287-288 (1).

marijuana four hours earlier. The officer's observations of Coverstone's driving and physical appearance, his obfuscation of where he had been and whether he had ingested any impairing substances, and the two officers' detection, however slight, of a smell like marijuana,[14] which Coverstone had admitted to smoking, constituted probable cause to effectuate a search of Coverstone's vehicle for the presence of marijuana despite his admission to possessing a CBD cigarette.[15] Accordingly, the trial court did not err by denying the motion to suppress.

*Judgment affirmed. Gobeil, J., and Senior Judge C. Andrew Fuller concur.*

---

[14] To the extent that the officer failed to distinguish between whether she smelled raw or burnt marijuana, that issue was one of credibility for the trial court. See *Jones*, 319 Ga. App. at 679 (1) ("inconsistencies in the officer's testimony as to whether the odor detected was of burnt or raw marijuana . . . presented a matter of the officer's credibility").

[15] See id. See also *State v. Menezes*, 286 Ga. App. 280, 282-283 (2) (648 SE2d 741) (2007) (assessing the probable cause to search the vehicle based on the totality of the circumstances at the time of the stop, including the conflicting answers given by the defendant).